**Judy FIERSTEIN, Respondent/Cross–Appellant,**

v.

**DePAUL HEALTH CENTER, Appellant/Cross–Respondent.**

**Nos. ED 76518, ED 76544.**

Missouri Court of Appeals, Eastern District, Division Four.

May 9, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 14, 2000.

Application for Transfer Denied Aug. 29, 2000.

Kenneth C. Brostron, Judith C. Brostron, Sarah K. Hackworth, St. Louis, for appellant.

Michael L. Schehter, Clayton, for respondent.

WILLIAM H. CRANDALL, Jr.,
Presiding Judge.

Defendant, DePaul Health Center, appeals from the judgment, entered pursuant to jury verdicts, in favor of plaintiff, Judy L. Fierstein, in her action for breach of fiduciary duty for the wrongful release of her medical records. The jury awarded actual and punitive damages. Plaintiff cross-appeals from the trial court's grant of remittitur, reducing the award of punitive damages. We affirm.

The evidence established that plaintiff's ex-husband (hereinafter husband) filed a motion to modify the decree of dissolution of his marriage to plaintiff with regard to custody of their two minor children. His attorney caused the service of a subpoena duces tecum for deposition on DePaul Health Center (hereinafter DePaul). The subpoena ordered DePaul's custodian of records to appear at a deposition in husband's attorney's office and to produce at that time any and all records pertaining to plaintiff and to her hospitalization on April 23, 1994 through April 27, 1994. A letter attached to the subpoena stated that the requested documents could be mailed to husband's attorney's office prior to the deposition to avoid appearing at the deposition. The custodian of records testified that she telephoned husband's attorney's office and spoke with a male employee who told her that plaintiff's attorney consented to the release of the records. The custodian executed an affidavit and mailed the documents to husband's attorney. Neither plaintiff nor her attorney, however, had given DePaul permission to release the medical records and they did not receive notice of the release of the medical records before the scheduled deposition. Husband later dismissed his motion to modify and plaintiff retained primary physical custody of the children.

Plaintiff brought an action against DePaul for the wrongful release of her medical records, alleging a breach of fiduciary duty owed to her under the physician-patient privilege.[1] The jury returned verdicts in favor of plaintiff, awarding her $10,000.00 in actual damages and $375,000.00 in punitive damages. The trial court entered judgment in accordance with the jury verdict for actual damages; but granted remittitur as to the punitive damages, reducing the punitive damage award to $25,000.00, and entered judgment on the punitive damage count in that amount. Both parties appeal from that judgment.

---

1. Plaintiff's original action also alleged a violation of the statute governing release of confidential medical records. Section 630.140, RSMo (Cum Supp.1999). In *Fierstein v. DePaul Health Center*, 949 S.W.2d 90 (Mo.App. E.D.1997), this court affirmed the trial court's grant of summary judgment in favor of DePaul on that count, but reversed the court's grant of summary judgment in favor of DePaul on the present claim and remanded the cause.

In its first point on appeal, DePaul contends that trial court erred in denying DePaul's motion for judgment notwithstanding the verdict.

■ First, DePaul alleges that plaintiff voluntarily waived the physician-patient privilege when she gave permission for her psychiatrist to speak with husband about her condition and hospitalization. DePaul argues that as a result of the waiver, plaintiff's privilege ceased to exist and the medical records were open to discovery without her consent.

■ DePaul's argument is without merit. In *Fierstein v. DePaul Health Center*, 949 S.W.2d 90, 93 (Mo.App. E.D. 1997) (hereinafter *Fierstein I*), this court held that "[a]t no time did [plaintiff] waive her physician-patient privilege." A decision by this court is the law of the case on all points raised and decided and the decision continues to govern throughout all subsequent proceedings both in the trial and appellate courts. *Boillot v. Conyer*, 861 S.W.2d 152, 154 (Mo.App. E.D.1993). No issue decided in the first appeal will be readdressed on the second. *Id.* This rule applies to matters decided by the appellate court's opinion, either directly or by implication. *Missouri Bd. of Pharmacy v. Tadrus*, 926 S.W.2d 132, 137 (Mo.App. W.D. 1996). This court did not find a waiver of the patient-physician privilege and we are bound by its decision on that issue. Judgment n. o. v. was not warranted on the basis of waiver of the physician-patient privilege.

■ For its second argument, DePaul contends plaintiff failed to prove not only that its release of the medical records four days before the deposition caused her emotional distress, but also that she would not have suffered the identical distress and humiliation when the records were produced either four days later at the deposition or ultimately under section 210.140, RSMo (1994) as part of a child custody proceeding where child abuse or neglect was alleged. DePaul contends that plaintiff thus failed to establish that "but for" the release of the medical records she would not have suffered any injury.

■ We disagree that plaintiff must satisfy a "but for" test in order to make a submissible case of breach of fiduciary duty. As this court stated in *Fierstein I*, 949 S.W.2d at 92, "If a physician discloses any information, without first obtaining the patient's waiver, then the patient may maintain an action for damages in tort against the physician." There was no requirement that plaintiff also show that the records would not have been released at some later date.

In addition, with regard to the premature release of plaintiff's medical records, this court stated in *Fierstein I*, 949 S.W.2d at 92–93:

> The subpoena directed DePaul's custodian of records to appear at a deposition on July 15, 1994. Regardless of the letter from Dr. Fierstein's attorney, DePaul was not instructed by the subpoena to release the records before that date. If the records had not been released prematurely, [plaintiff] would have had the opportunity to dispute the release of her records at the deposition on July 15, 1994 by filing a motion to quash the subpoena.

It is therefore irrelevant that there was a possibility that the medical records ultimately would have been released. At the point in time that DePaul produced the records, not only was the future release of the medical records speculative but also there was no opportunity for plaintiff to contest the release of those records.

■ For its third argument, DePaul asserts plaintiff failed to make a submissible case on her claim for punitive damages in that she failed to prove DePaul's conduct was outrageous and/or motivated by evil intent or reckless indifference. DePaul claims its release of the medical records was done in good faith and with the honest belief that its conduct was lawful.

■ Punitive damages are appropriate where the conduct of the defendant is outrageous because of defendant's evil motive or reckless indifference to the rights of others. *Walker v. Gateway Nat'l Bank*, 799 S.W.2d 614, 617 (Mo.App.1990). Punitive damages are imposed for the purpose of punishment and deterrence. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996).

Here, DePaul's custodian of records testified that she telephoned husband's attorney's office and talked to a male employee there to confirm that plaintiff's counsel had consented to the release of the records. The only man employed in husband's counsel's office at that time testified that he did not recall talking to the custodian of records and that if he had spoken with her, he would not have told her that plaintiff's attorney consented to the release of the records.

■ Awarding punitive damages is peculiarly committed to the jury and the trial court's discretion and the appellate court will interfere only in extreme cases. *Fust v. Francois*, 913 S.W.2d 38, 50 (Mo. App. E.D.1995). The jury is free to believe all, part, or none of the testimony. *Baker v. Guzon*, 950 S.W.2d 635, 641 (Mo. App. E.D.1997).

Here, the jury was free to disbelieve the testimony of the custodian of records that she made a good faith attempt to verify the consent of plaintiff's counsel to the release of the medical records. It is undisputed that the custodian neither secured plaintiff's express consent to the release of the records nor contacted plaintiff's attorney personally to obtain authorization to do so. Given the gravity of the information contained in medical records, the jury could have viewed the conduct of DePaul's custodian of records as exhibiting a reckless indifference to the rights of plaintiff to have her medical records remain private. Plaintiff made a submissible case on her claim for punitive damages.

For the reasons stated above, the trial court did not err in denying DePaul's motion for judgment notwithstanding the verdict. DePaul's first point is denied.

In its second point, DePaul avers the trial court erred in denying its motion for new trial. We review the trial court's denial of a motion for new trial to determine if there was substantial evidence to support the verdict. *Smith v. Wal–Mart Stores, Inc.*, 967 S.W.2d 198, 208 (Mo.App. E.D.1998). We consider the evidence in the light most favorable to the jury's verdict. *Id.* However, matters such as the weight of the evidence, credibility of the witnesses, and resolution of conflicts in the testimony are not subject to our review. *Id.*

■ First, DePaul charges error in the trial court's excluding evidence of section 210.140. That statute provides in relevant part, "Any legally recognized privileged communication, except that between attorney and client, shall not apply to situations involving known or suspected child abuse or neglect...." DePaul contends that the statute would have mandated the release of the medical records because husband alleged child abuse or neglect in his motion for modification of custody.

■ We disagree with DePaul that the trial court improperly prohibited DePaul's introducing section 210.140 into evidence. The admission or exclusion of evidence is within the sound discretion of the trial court and will not be reversed unless there is a substantial or glaring injustice. *Twin Bridges Elec., Inc. v. Collins*, 823 S.W.2d 14, 16 (Mo.App.1991). In *Fierstein I*, 949 S.W.2d at 93, this court held that section 210.140 did not apply in the present case. This court stated, "DePaul cannot now claim after it released [plaintiff's] records without knowledge of the allegations contained within [husband's] motion that section 210.140 was the basis for the release." *Id.* The trial court did not err in excluding evidence of section 210.140 at trial.

DePaul's second claim is that plaintiff's verdict director did not contain all of the ultimate facts and therefore was too general and prejudicially erroneous. In reviewing the propriety of instructions submitted to the jury, the burden of proof rests upon the party challenging the instruction. *Powell v. Norman Lines, Inc.*, 674 S.W.2d 191, 194 (Mo.App.1984).

Plaintiff's verdict directing instruction read as follows:

### Instruction No. 5

Your verdict must be for Plaintiff if you believe:

First, Defendant disclosed Plaintiff's hospital records to attorneys for [husband], and

Second, Defendant made such disclosure without first obtaining Plaintiff's consent to do so, and

Third, as a direct result of such disclosure, Plaintiff sustained damage.

DePaul challenges the court's refusal to include the phrase "as a direct result of such disclosure prior to the July 15 record custodian's deposition" in the third paragraph of the verdict directing instruction.

The verdict director complied with the directive of this court about what elements were necessary to make a submissible case in *Fierstein I*. This court stated that "[i]f a physician discloses any information, without first obtaining the patient's waiver, then the patient may maintain an action for damages in tort against the physician." *Fierstein I*, 949 S.W.2d at 92. The trial court did not err in submitting Instruction No. 5, plaintiff's verdict director, to the jury.

DePaul's third claim of error involves the admission of the testimony of plaintiff's therapist, who was a clinical social worker and not a medical doctor,

about the emotional distress plaintiff suffered as a result of the release of the medical records.[2] DePaul argues that plaintiff presented no competent expert medical evidence to establish that her emotional distress claim was medically diagnosable.

Section 490.065.1, RSMo (1994) provides:

In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

The essential test of expert opinion evidence is whether it will be helpful to the fact finder. *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 281 (Mo.App. E.D.1997). The admission or exclusion of expert opinion testimony is a matter of trial court discretion. *Id.*

In *Landers,* this court addressed the issue of whether a neuropsychologist was qualified to testify as to causation of an organic brain injury. *Id.* at 280. This court reasoned that the expertise of an expert witness need not be based solely on his or her education. *Id.* An individual with substantial practical and specialized experience in a given area may also be qualified as an expert. *Id.* at 281–282. "Conceivably a psychologist or other nonphysician might attain a degree of knowledge, skill, experience, training, or education in medicine that would provide the foundation to become a medical expert." *Childs v. Williams,* 825 S.W.2d 4, 10 (Mo. App.1992).

The record in the instant case supports the trial court's determination that plaintiff's witness was qualified to testify as an

---

**2.** DePaul's point relied on also charges error in the trial court's permitting plaintiff to testify about her emotional distress, but DePaul did not develop this claim of error in the argument portion of its brief. When matters claimed as alleged error in a point relied on are not developed in the argument portion of a brief, they are deemed abandoned. *In the Interest of A.H.,* 963 S.W.2d 374, 379 (Mo. App. S.D.1998).

expert about plaintiff's mental distress and the causal connection between her distress and the release of the medical records. The witness had a Ph.D. in social work, was in private practice for about 13 years, and was licensed as a clinical social worker by the State of Missouri. He was an adjunct professor as Washington University George Warren Brown School of Social Work and had published two articles related to alcohol abuse in young people. He stated that his duties as a clinical social worker required him to diagnose and to treat mental illnesses, from depression to alcohol abuse. He treated plaintiff prior to and following her hospitalization and was treating her at the time of trial. One would be hard-pressed to conclude that plaintiff's expert lacked the knowledge, skill, or training simply because he was a clinical social worker and not a medical doctor.

■ DePaul also challenges the admission of the clinical social worker's testimony because he gave his opinions based on a reasonable degree of "clinical certainty" in lieu of "medical certainty." We fail to see how this difference in wording is fatal to the clinical social worker's testimony regarding plaintiff's mental distress. His expert opinion evidence was understandable to the jury and assisted them in understanding the evidence to determine whether plaintiff suffered mental distress as a result of DePaul's release of the medical records. The trial court did not err in admitting the testimony of plaintiff's expert.

■ In its fourth claim of error, DePaul contends the trial court erred in refusing to submit DePaul's affirmative defense of plaintiff's waiver of her physician-patient privilege to the jury. In view of our holding in *Fierstein I* that there was no such waiver, the trial court did not err in refusing an instruction on that issue. It is error to give a jury instruction where there is no evidence to support it. *Titsworth v. Powell*, 776 S.W.2d 416, 423 (Mo. App.1989).

Lastly, DePaul contends the jury verdict of $10,000.00 in actual damages and $375,000.00 in punitive damages was excessive, contrary to the evidence, and reflected the bias and prejudice of the jury.

■ We address the verdict as it relates to the actual damage award. If the verdict is excessive because of passion and prejudice on the part of the jury, then the judgment is severely prejudiced and can only be addressed through a new trial. *Fust*, 913 S.W.2d at 49. Such relief is available upon a showing that trial error incited prejudice in the jury. *Id.* The amount of the verdict alone is not sufficient proof that the verdict was a result of bias, passion, or prejudice, for the complaining party must show that there was some trial error or misconduct of the prevailing party which prejudiced the jury. *Id.* DePaul, however, has neither prevailed on any of its claims of trial court error in this appeal nor specified any other trial error or misconduct sufficient in severity to require a new trial. DePaul failed to demonstrate that the jury was prejudiced by trial court error in its award of actual damages.

■ Finally, we address the amount of the jury verdict as it relates to the punitive damage award. DePaul contends the verdict with regard to punitive damages was excessive and alternatively the trial court's grant of remittitur was proper.

■ In general, the determination of damages is primarily for the jury. *Fust*, 913 S.W.2d at 49. The trial court's reduction of the jury award by remittitur constitutes a ruling upon the weight of the evidence. *Id.* Remittitur is appropriate if, after reviewing the evidence in support of the jury's verdict, the court finds the verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages. Section 537.068, RSMo (1994). The trial court has broad discretion in ordering remittitur and its discretion to reduce the

damages will not be disturbed on appeal absent an abuse of that discretion. *Fust*, 913 S.W.2d at 49. The appellate court will interfere only when the verdict is so grossly excessive that it shocks the conscience of the court and convinces the court that both the jury and the trial court abused their discretion. *Id.* Yet, this court is mindful of the purpose of punitive damages—to punish and deter. *Id.* at 51.

Here, the court reduced the jury's punitive damage award from $375,000.00 to $25,000.00. Our review of the record indicates there was no abuse of the trial court's discretion in granting remittitur. The trial court's award of punitive damages of $25,000.00 was warranted to deter such conduct by DePaul in the future, but was not so excessive as to shock the conscience.

DePaul raises other claims of error regarding the award of punitive damages, in particular the constitutionality of section 537.675.2, RSMo (Cum.Supp.1999) which requires one-half of all punitive damage awards to be given to the State and plaintiff's failure to instruct on the clear and convincing standard of evidence to support an award of punitive damages. We have reviewed these claims and find no error of law appears. No precedential purpose would be served by a written opinion on these claims. These claims are denied pursuant to Rule 84.16(b).

In view of our holding that the trial court did not abuse its discretion in granting remittitur, we need not address DePaul's claim that the jury's award of punitive damages in the amount of $375,000.00 was excessive.

For the reasons stated above, the trial court did not err in denying DePaul's motion for new trial. DePaul's second point is denied.

As to plaintiff's cross-appeal, in view of our holding that the trial court did not

abuse its discretion in granting remittitur, plaintiff's sole point challenging the trial court's grant of remittitur is denied.

The judgment of the trial court is affirmed.[3]

MARY K. HOFF, J., and JAMES A. PUDLOWSKI, Sr. J.: Concur.

---

**3.** Plaintiff's motion to transfer this case to the Supreme Court of Missouri on the basis of