**William Patrick HILL and Jacques Hughes, Plaintiffs/Appellants/Cross–Respondents,**

**v.**

**CITY OF ST. LOUIS, Missouri, Defendant,**

**and**

**James Murphy, in his Official Capacity as Sheriff for the City of St. Louis, Missouri, Defendant/Respondent/Cross–Appellant.**

**Nos. ED 96207, ED 96174.**

Missouri Court of Appeals, Eastern District, Division Two.

May 1, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 25, 2012.

Application for Transfer Denied Aug. 14, 2012.

Jerome J. Dobson, Jonathan C. Berns, Dobson, Goldberg, Berns & Rich, LLP, St. Louis, MO, for Plaintiffs/Appellants/Cross–Respondents.

Christine L. Hodzic, Nancy R. Kistler, Assistant City Counselor, St. Louis, MO, for Defendant and Defendant/Respondent/Cross–Appellant.

1. Section 213.010 RSMo (2000) *et seq.* All further statutory references will be to RSMo (2000).

KATHIANNE KNAUP CRANE, Presiding Judge.

In this hostile work environment lawsuit, which was brought under the Missouri Human Rights Act (MHRA),[1] the jury returned verdicts in plaintiffs' favor assessing actual and punitive damages. The trial court entered a judgment in plaintiffs' favor in which it awarded actual damages consistent with the jury's verdicts, but it granted a remittitur of the punitive damage awards and entered judgment for a lower amount of punitive damages. It also awarded plaintiffs attorney's fees and costs. Both parties appeal. We affirm.

## FACTUAL BACKGROUND

Plaintiffs William Patrick Hill and Jacques Hughes are African Americans who were employed as deputy sheriffs in the office of defendant, the Sheriff of the City of St. Louis. Plaintiff Hughes was employed as a deputy sheriff from April 1994 through April 1996 and again from August 2001 through April 2008. Plaintiff Hill was employed as a deputy sheriff beginning in February 1995 through the time of trial. In that workplace, beginning in approximately 2001, white deputies used racial slurs in addressing African–American deputies; white supervisors discriminated in work assignments on the basis of race by placing African–American deputies in the more difficult and less desirable positions; segregated seating occurred during roll call; and white supervisors took racially disparate disciplinary actions by disciplining African–American deputies for certain infractions while failing to discipline white deputies for the same behavior.

On July 18, 2006, a supervisor made a hangman's noose from a rope and hung it in the prisoner holding cells in the Civil Courts building where plaintiffs were working as deputy sheriffs. A white supervisor told African–American prisoners who walked by the open door to the room where the noose was hanging, "This is what you gonna get if you act up." Plaintiff Hill saw the noose while it was hanging in the holding cell area. Plaintiff Hughes saw the noose in a cell phone photo shown to him by plaintiff Hill, who told him it was in the holding cell area. He saw it again in the hands of a lieutenant after the noose had been taken down. Plaintiffs Hill and Hughes testified that various supervisors later portrayed the noose as a "prank" or a "joke." On several occasions, plaintiffs and other employees complained to supervisors about the racially hostile work environment, but in response to these complaints, the supervisors either failed to take any action or deviated from their own investigative procedures.

## PROCEDURAL BACKGROUND

Plaintiffs filed a lawsuit, which as amended, sought damages from the City of St. Louis[2] and Sheriff James Murphy, in his official capacity as Sheriff of the City of St. Louis, for race discrimination and retaliation in violation of the MHRA. The trial was bifurcated pursuant to section 510.263. The trial court submitted the case to the jury on plaintiffs' claims of hostile work environment and retaliation. On the hostile work environment claims, the jury found in plaintiffs' favor and assessed plaintiff Hill's actual damages at $25,000.00 and plaintiff Hughes's actual

damages at $125,000.00. It found defendant liable for punitive damages to each plaintiff. However, it found in defendant's favor on plaintiffs' retaliation claims. After the second phase of trial, the jury assessed punitive damages at $350,000.00 for each plaintiff.

The trial court entered a judgment awarding actual damages in the amounts assessed by the jury. However, it ordered remittitur of the punitive damage awards and entered a judgment awarding $75,000.00 in punitive damages to each plaintiff. The trial court also awarded $326,000.00 in attorney's fees and $11,279.68 in costs to plaintiffs.

Both parties appeal. Defendant challenges (1) the trial court's ruling that allowed plaintiffs' counsel to assert in closing argument that Sheriff Murphy would not have to personally pay damages on any judgment in plaintiffs' favor; (2) the trial court's rulings that allowed certain expert testimony; and (3) the trial court's verdict-directing instructions on the hostile work environment counts. Plaintiffs challenge the trial court's remittitur of punitive damages and the amount of the attorney's fees award.[3]

## DISCUSSION

▆▆▆ To prevail on a hostile work environment claim, plaintiffs were required to prove that (1) they were members of a protected group; (2) they were subjected to unwelcome protected group harassment; (3) their membership in a protected group was a contributing factor in the harassment; and (4) a term, condition, or privilege of their employment was affected by

---

**2.** The City of St. Louis was later removed as a party.

**3.** Both parties have cited unpublished federal district court decisions in their briefs. These have no precedential value in this court.

*Thornburgh Insulation v. J.W. Terrill,* 236 S.W.3d 651, 656 n. 4 (Mo.App.2007); *Craft v. Philip Morris Companies, Inc.,* 190 S.W.3d 368, 376 (Mo.App.2005). We have not considered them.

the harassment. *Alhalabi v. Mo. Dept. of Natural Resources*, 300 S.W.3d 518, 527 (Mo.App.2009). In addition, to recover punitive damages, plaintiffs were required to adduce "clear and convincing proof of a culpable mental state, either from a wanton, willful, or outrageous act, or from reckless disregard for an act's consequences such that an evil motive may be inferred." *Id.* at 529. *See also Leeper v. Scorpio Supply IV, LLC*, 351 S.W.3d 784, 796–97 (Mo.App.2011). Reckless disregard can be shown by evidence that an employer knew of the harassment and failed to adequately remedy the situation, *Alhalabi*, 300 S.W.3d at 529, or by evidence of the failure to properly investigate complaints of discrimination, *Leeper*, 351 S.W.3d at 797.

## DEFENDANT'S APPEAL

### I. Closing Argument—Sheriff Murphy's Personal Financial Liability

In his first point, defendant asserts that trial court erred in permitting plaintiffs to argue in closing argument that Sheriff Murphy had no personal financial liability on the judgment "because such argument is a violation of the collateral source rule and is irrelevant in that the argument improperly injected finances into the liability stage of the trial." We disagree.

The petition named Sheriff Murphy as a defendant in his official capacity as sheriff. During voir dire, plaintiffs' counsel asked about the venire's understanding that Sheriff Murphy was being sued in his offi-

cial capacity but not in his individual capacity. During trial, plaintiffs called Sheriff Murphy in their own case. Sheriff Murphy testified on direct that he understood that he was not being sued personally. Over defendant's "argument" objection, Sheriff Murphy testified that he had no personal or financial liability or exposure in the case.

Before closing argument in the liability phase of the trial, defendant asked the trial court to prevent plaintiffs' counsel from arguing that Sheriff Murphy would not be personally liable for any damages awarded by the jury because he was only being sued in his official capacity. The trial court declined to enter this order. During plaintiffs' closing argument, counsel stated, "I want to make sure you understand that Sheriff Murphy has no personal financial liability in this matter." Defense counsel objected on the grounds that (1) it misstated the law,[4] (2) "who is liable is not in evidence,"[5] and (3) "it's collateral source." The trial court overruled the objections and instructed the jury to be guided by its recollection of the evidence. Plaintiffs' counsel then argued that if the jury entered a judgment against Sheriff Murphy in his official capacity, he would "not pay any part of it out of his own pocket."

The trial court has broad discretion in controlling the scope of closing argument. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 870 (Mo. banc 1993). We review the trial court's ruling

---

**4.** Defendant has not pursued on appeal this ground for his objection, and it has no merit. "[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct.

3099, 87 L.Ed.2d 114 (1985). *See also Gas Serv. Co. v. Morris*, 353 S.W.2d 645, 647–48 (Mo.1962); *Best v. Schoemehl*, 652 S.W.2d 740, 742 (Mo.App.1983).

**5.** Defendant has likewise not pursued on appeal this ground for his objection. The fact that Sheriff Murphy was not personally liable was in evidence.

for an abuse of discretion, and we will not reverse unless the ruling resulted in prejudice. *Id.*; *Powderly v. South County Anesthesia Assoc.*, 245 S.W.3d 267, 272 (Mo. App.2008).

### A. Collateral Source

■ Defendant first argues that the trial court erred in overruling defendant's objection to this argument because it was a violation of the collateral source rule. We disagree. The collateral source rule is a "combination of rationales applied to a number of different circumstances to determine whether evidence of mitigation of damages should be precluded from admission." Washington by *Washington v. Barnes Hosp.*, 897 S.W.2d 611, 619 (Mo. banc 1995). In the argument under this point, defendant does not explain how the evidence that Sheriff Murphy was not personally liable falls within the collateral source doctrine, much less why that doctrine would apply to the closing argument in this case.

Instead, defendant primarily relies on *Rytersky v. O'Brine*, 335 Mo. 22, 70 S.W.2d 538 (1934), to support his argument. *Rytersky* does not aid defendant. In *Rytersky*, the plaintiff's attorney promised the jury in closing argument that plaintiff would look to the insurance company alone to collect the judgment, and the defendant would not have to pay anything. The Missouri Supreme Court determined that this argument was improper and prejudicial for several reasons: First, the issues of a defendant's ability to pay a judgment or a defendant's insurance coverage are irrelevant to the questions of negligence or the amount of damages; second, it is "reprehensible" to "instill into the jurors' minds the idea that a defendant is not really interested in the outcome of the case" because someone else will bear the loss; and third, counsel's argument was based on facts not in evidence and contained an improper promise that the defendant would not have to pay the judgment. *Id.* at 540–41.

In this case, in contrast to *Rytersky*, defendant was not individually liable, and the fact that he was not being sued in his personal capacity was in evidence. Defendant was not personally responsible for paying any damages because he was not being sued as an individual, not because someone else would pay damages for his personal liability.

### B. Relevance

■ Defendant next argues that plaintiffs' counsel's argument was irrelevant because it improperly injected finances into the liability stage of the trial. Defendant did not object on the ground of relevance at trial. Our review is limited to the objection or grounds of objection that were made to the argument at trial. *Handshy v. Nolte Petroleum Co.*, 421 S.W.2d 198, 202 (Mo.1967). "[A] party seeking the correction of error must stand or fall on the case which was made in the trial court, and thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal." *Id.* Since no trial objection was made on the ground of relevance, we may not consider that claim on appeal. *Id.*; *Maples v. Charles Burt Realtor, Inc.*, 690 S.W.2d 202, 214 (Mo. App.1985).

The trial court did not abuse its discretion in permitting plaintiffs to argue in closing argument that Sheriff Murphy had no personal liability on the judgment. Point one is denied.

### II. Expert Witness—Dr. Dowden–White

In his second point, defendant asserts that the trial court erred in allowing Priscilla Dowden–White, Ph.D., to testify as an

expert witness because (1) the field of history is outside the scope of section 490.065, and her opinion testimony invaded the province of the jury because she did not provide scientific, technical, or other specialized knowledge to assist the jury with understanding the evidence; and (2) her testimony only served to determine the plaintiffs' credibility and the "conduct at issue."

Before trial, defendant filed a motion in limine to exclude the testimony and opinions of Dr. Dowden–White, a university professor of African–American history, about the noose. Defendant argued that the jurors could recognize the noose as a symbol of racial oppression from their own experience and knowledge, and as a result, Dr. Dowden–White's testimony would not assist the jury in understanding the evidence or determining a fact in issue. The motion did not seek exclusion of Dr. Dowden–White's testimony on the ground that it would improperly comment on witness credibility.[6] At a trial recess, the trial court heard argument on this motion. It rejected the argument that the racially discriminatory symbolism of the noose was common knowledge because there was evidence that a lieutenant had said it was "a prank." The court indicated that it would allow Dr. Dowden–White to testify that the incidents in the Sheriff's office were racially discriminatory.

At trial, before Dr. Dowden–White took the stand, defendant renewed his objection on the grounds that her testimony would be "cumulative" of plaintiff Hughes's testimony, "common knowledge," "bolstering,"

and "not necessary" for the jury. The trial court explained that it believed that Dr. Dowden–White's testimony was relevant to help the jury decide whether the noose incident is "not a practical joke, or yes it is a practical joke."[7] It explained that this was the only part of her testimony that it had found relevant, and that was why it had limited her testimony to that issue. Defense counsel then argued that Dr. Dowden–White's knowledge was not specialized.

Dr. Dowden–White first testified to her education, experience, and credentials. When plaintiffs' counsel asked her about the historical significance of the noose as a symbol of racial oppression, defense counsel objected on the ground that Dr. Dowden–White lacked specialized knowledge and for the reasons stated in his motion in limine. The trial court overruled defendant's objection. Dr. Dowden–White provided detailed testimony about events in the Jim Crow era and the symbolism that the noose acquired from these events for the African–American population, which symbolism is still associated with the noose. After defendant again objected on the same grounds and on lack of foundation, Dr. Dowden–White testified to her opinion, based upon her research and knowledge, that the hangman's noose "symbolizes control, intimidation, terror, fear, it's a symbol of racial repression." She further testified that African Americans would perceive the noose in this manner.

■ The determination of whether testimony constitutes expert testimony and if

6. The motion also sought exclusion of Dr. Dowden–White's testimony on all other topics because they were not disclosed in response to discovery. The court granted this part of the motion.

7. At trial, Sheriff Murphy testified that the noose incident "was just a joke gone bad."

Deputy James Murphey, who conducted the investigation into the noose incident, reported that a supervisor said he made and hung the noose as a joke, and Deputy Murphey concluded in his report that he believed that the noose incident was a joke "gone bad."

so, whether that expert testimony should be admitted in civil cases is governed by section 490.065. We review the trial court's interpretation of this statute *de novo. Kivland v. Columbia Orthopaedic Group, LLP,* 331 S.W.3d 299, 310–11 (Mo. banc 2011). However, it is within the trial court's discretion to determine the "necessity" of expert testimony, that is, whether the testimony is on subjects about which the fact finder lacks experience or is on subjects that will assist the fact finder. *Stone v. Missouri Dept. of Health and Senior Services,* 350 S.W.3d 14, 21 (Mo. banc 2011).

A. *Field of History Outside the Scope of Section 490.065/Opinions Invaded Province of Jury*

██ Defendant first argues that the field of history falls outside the scope of section 490.065 because the history of slavery, lynching, and nooses with respect to African Americans is common knowledge in the United States, and jurors could draw on their own knowledge of how a reasonable person would have viewed the noose.

██ Section 490.065.1 allows a qualified expert to testify to an opinion or otherwise in any civil action if his or her "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "Thus, if a witness utilizes and applies 'scientific, technical, or other specialized knowledge,' the testimony is properly that of an expert." *Duerbusch v. Karas,* 267 S.W.3d 700, 710 (Mo.App.2008). "If, however, an expert testifies without applying specialized knowledge, he or she is 'merely drawing an inference which the jurors are just as capable of drawing.'" *Id.* (quoting *Vittengl v. Fox,* 967 S.W.2d 269, 279 (Mo.App.1998)). To offer an opinion, the expert's knowledge on the subject must be superior to that of the ordinary juror, and the opinion must aid the jury in deciding an issue in the case. *Duerbusch,* 267 S.W.3d at 710.

Defendant fails to cite any legal authority that supports his blanket contention that the entire field of history is outside the scope of section 490.065. Plaintiffs have cited a reported case that has recognized a situation in which expert testimony by a historian would be appropriate, *Oneida Indian Nation of Wis. v. State of N. Y.,* 732 F.2d 261, 265 (2d Cir.1984). In the absence of any relevant legal authority supporting defendant's argument that the field of history cannot be the subject of expert testimony or any explanation for the absence of such authority, this argument is not preserved. *State ex rel. Moore v. Brewster,* 116 S.W.3d 630, 643 (Mo.App.2003).

This leaves for determination the question of whether the trial court abused its discretion in determining that Dr. Dowden–White's testimony was based on specialized knowledge that would assist the jury in understanding the evidence or determining a fact in issue. We find no abuse of discretion.

First, the trial court was clearly aware of section 490.065.1 and made its determination pursuant to that statute. Second, the record supports the trial court's exercise of discretion. The trial court observed that there was an issue of whether the noose could be considered a prank or racially discriminatory. During voir dire, four venirepersons gave answers that indicated that a noose had this meaning for them, but none of these venirepersons served on the jury. Another venireperson, who also did not serve on the jury, described a situation of a voodoo doll hung by a noose in his workplace that was funny to some but offensive to others. The jury as seated was composed of ten Caucasians

and two African Americans. Before Dr. Dowden–White testified, Deputy Murphey testified about his report in which a supervisor had described the making of the noose as a joke and in which he concluded the incident was a joke "gone bad." After Dr. Dowden–White testified, the trial court commented that it believed that it had made the right judgment because "her testimony made apparent what most-even most of the more educated people in the room probably wouldn't have made connections about." It concluded that her testimony was relevant in the limited area in which she testified, and it assisted the trier of fact.

The trial court carefully exercised its discretion and did not abuse its discretion in determining that the symbolism of the noose to African Americans was not such a matter of common knowledge that it would invade the province of the jury.

**B.** *Determination of Witness Credibility*

■ Defendant next argues that Dr. Dowden–White's testimony deprived the jury of its duty to determine "witness credibility and the conduct at issue." He argues that the only purpose of the testimony was to prove the credibility of plaintiffs and their witnesses. This argument is not preserved.

Defendant does not refer to any place in the transcript where he based an objection to Dr. Dowden–White's testimony on the ground that she gave an opinion relating to the credibility of plaintiffs or their witnesses. *See Collins v. Ruffus,* 63 S.W.3d 303, 304 (Mo.App.2001). Defendant's trial objection on the grounds of "bolstering" is not a credibility objection. "Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony." *State v. Forrest,* 183 S.W.3d 218, 224 (Mo. banc 2006) (quoting *State v. Wolfe,* 13 S.W.3d

248, 257 (Mo. banc 2000)). Defendant does not complain of any out-of-court statement by a witness. "A party may not raise or expand an objection to evidence on appeal that it did not make at trial." *St. Louis University v. Geary,* 321 S.W.3d 282, 288 n. 3 (Mo. banc 2009). "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a). Accordingly, we do not address this issue.

The trial court did not abuse its discretion in permitting Dr. Dowden–White to testify as an expert about the historical significance and symbolism of the noose to African Americans. Point two is denied.

**III.** *Expert Testimony—Ann Plunkett*

In his third point, defendant asserts that the trial court erred in allowing Ann Plunkett to testify as an expert because (1) her opinions constituted an improper instruction of the law, and (2) the fields of human resources and law are outside the scope of section 490.065. He also asserts that the trial court plainly erred in allowing Ms. Plunkett's testimony because it only served to determine the credibility of the plaintiffs and the "conduct at issue."

Before trial, defendant filed a motion in limine, which the trial court overruled, to exclude the testimony of Ms. Plunkett, a human resources consultant and attorney. At a trial recess, the court revisited the motion and heard the parties' arguments on Ms. Plunkett's proposed testimony. Defendant argued that Ms. Plunkett's testimony about response plans to racial harassment would be within the realm of common knowledge, that expert witnesses cannot testify about human resources law and policy, and that human resources experts are not necessary to establish any of

the elements of a harassment claim. The trial court allowed Ms. Plunkett to testify.

Ms. Plunkett testified to her education, experience, and credentials in the human resources area, including her experience as an expert witness. Ms. Plunkett described the EEOC enforcement guidance for employers issued in 1999. When plaintiffs' counsel asked Ms. Plunkett how the EEOC guidance was regarded in the human resource community, defense counsel objected on the ground, "she's talking about law, something based on Title Seven. So I object she's talking as a lawyer giving this legal advice at this point." The trial court overruled the objection, commenting that it did not believe "that's what the question sought." After Ms. Plunkett described the materials she reviewed in arriving at her opinions in this case, plaintiffs' counsel asked:

> The question was whether Sheriff Murphy and his department failed to take reasonable care to prevent harassment and discrimination in the workplace, and I'll rephrase it to say as outlined by the EEOC enforcement guidance and/or generally accepted human resource procedures.

Defense counsel objected "based on the EEOC enforcement guidance, that's just asking the expert to testify as to what the law says," and on relevance. After a colloquy between the court and counsel, during which the court found Ms. Plunkett's testimony relevant, plaintiffs' counsel rephrased his question to ask:

> Do you have an opinion, with a reasonable degree of professional certainty, as to whether Sheriff Murphy and his department took reasonable care to prevent harassment and discrimination in the workplace consistent with reasonable standards of human resource procedures?

Ms. Plunkett then testified to her opinion that defendant's written policy did not constitute a comprehensive anti-discrimination, anti-harassment policy for its workforce, and, in response to further questions, she explained what good human resources practices and EEOC enforcement guidance required and how defendant's written policy, investigation, and response deviated from them. In response to defendant's objection, the trial court explained that it was "appropriate and helpful to the jurors to allow her to testify regarding the procedures of the sheriff's department and whether, in her expert professional opinion, those procedures are consistent with reasonable standards of human resource management or practice." The trial court added that Ms. Plunkett's testimony "does assist the trier of fact, the jury." At the conclusion of Ms. Plunkett's testimony, plaintiffs made an offer of proof about the matters on which the court would not allow Ms. Plunkett to testify. The trial court responded that it considered each of the questions under section 490.065, it allowed those questions that sought opinions that assisted the trier of fact, and it disallowed other questions that sought opinions that the court did not find helpful or would not assist the trier of fact.

A. *Opinion Constituted an Improper Instruction on Law*

■ Defendant first argues that Ms. Plunkett used EEOC enforcement guidance, which interprets Title VII, to arrive at her expert opinion. Defendant concludes that as a result, Ms. Plunkett effectively instructed the jury "as a matter of law" that "defendant did not take reasonable care to prevent harassment and discrimination in the workplace, did not conduct an effective investigation into the noose, and did not take any remedial measures."

■ Generally, expert testimony on issues of law is inadmissible because this testimony "encroaches upon the duty of the court to instruct on the law." *Howard v. City of Kansas City*, 332 S.W.3d 772, 785 (Mo. banc 2011) (quoting *Wulfing v. Kansas City Southern Ind.*, 842 S.W.2d 133, 153 (Mo.App.1992), overruled on other grounds by *Executive Bd. of Missouri Baptist Convention v. Carnahan*, 170 S.W.3d 437, 447 n. 5 (Mo.App.2005)). The judge's own legal knowledge makes such testimony superfluous. *Wulfing*, 842 S.W.2d at 153.

However, expert testimony on complex procedural matters, industry standards, and highly technical statutes and regulations is permissible to allow the jury to evaluate the conduct of the parties, even though the testimony covers matters of law. *See Strong v. American Cyanamid Co.*, 261 S.W.3d 493, 514 n. 5 (Mo.App. 2007); *George Weis Co., Inc. v. Dwyer*, 956 S.W.2d 335, 339–40 (Mo.App.1997); *Wulfing*, 842 S.W.2d at 153–54.

In *Wulfing*, a breach of contract case, the court considered a claim that the trial court erred in admitting the testimony of an attorney specializing in securities law that the defendant should have caused another company to be registered as an investment company to comply with the contract. The appellant argued that the expert testified to a matter of law and invaded the province of the jury, specifically asserting:

> [The] testimony concerning the registration process was so replete with the legal opinions, such as: what exemptions the SEC staff would have permitted, the interpretation and application of statutes and regulations, predictions of the determinations of administrative agencies and courts and other matters of law reserved for the trial judge, as to have invaded that judicial prerogative.

The court of appeals rejected this argument and held:

> A witness qualified as an expert in securities regulation, nevertheless, is competent to explain to the jury 'the step-by-step practices ordinarily followed by lawyers and corporations in shepherding a registration statement through the SEC ... Testimony concern[ing] the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry.' *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508[1–3] (2d Cir.1977).

842 S.W.2d at 153–54.

*George Weis* involved a lawsuit against a school board for failure to obtain a "good and sufficient surety" as required by statute. We held that, even if the point had been properly preserved, the trial court did not err in allowing an attorney to testify that, as a procedural matter, a bond can be enforced in Missouri when the bonding company is not registered in *Missouri*. 956 S.W.2d at 339. We held that the testimony was probative of whether there was a valid bond. *Id.* at 340.

Ms. Plunkett's testimony about EEOC enforcement guidance and the accepted human resources practices is admissible under the same theories as those set out in *Wulfing* and *George Weis*. The trial court did not err in overruling defendant's objection that her testimony constituted an improper instruction of law.

B. *Field of Human Resources and Law Outside the Scope of Section 490.065*

■ Defendant next argues that the trial court erred in admitting Ms. Plunkett's testimony because the field of human

resources and law is outside the scope of section 490.065. Defendant relies on *Wilson v. Muckala*, 303 F.3d 1207 (10th Cir. 2002), a federal appellate case that held that the trial court did not abuse its discretion in excluding the testimony of a human resources expert in a sexual harassment case brought by a nurse and her husband against a doctor and the hospital where the nurse worked. In *Muckala*, the trial court had prohibited testimony from a human resources expert about the defendant hospital's response plan in cases of sexual harassment and the reasonableness of the hospital's response to the plaintiff's claim. The trial court found that this expert testimony was relevant, but excluded it because the facts were "not so complicated as to require the testimony of an expert witness on either the adequacy of the plan or policy or the investigation" that followed. The jury found in the defendants' favor, and plaintiffs appealed. The court of appeals held that the trial court did not abuse its discretion because the issues to which plaintiff's expert would have testified "were not so impenetrable as to require expert testimony." 303 F.3d at 1219.

*Muckala* is both distinguishable and unpersuasive. First, it is impossible to determine if *Muckala* was applied in a similar factual context because the opinion does not explain what the expert's credentials were, what the expert's proposed testimony would have covered, or what generally accepted industry standards the expert would have used. More importantly, *Muckala* was not decided within the same procedural context. The fact that the appellate court in *Muckala* did not find that the trial court abused its discretion in prohibiting the human resource expert's testimony is not authority for the proposition that a trial court abuses its discretion if it admits the testimony of a human resources expert in another case. An argument to the contrary ignores the nature of judicial discretion. *N.W. Elec. Power Co-op., Inc. v. Buckstead*, 578 S.W.2d 314, 317 (Mo.App.1979). *See also State v. Bowman*, 337 S.W.3d 679, 699 n. 13 (Mo. banc 2011).

Defendant also relies on *Stucker v. Chitwood*, 841 S.W.2d 816, 819 (Mo.App.1992), for the proposition that "the opinion testimony of expert witnesses 'should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved.'" *Id.* (quoting *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 586 (Mo. banc 1978)). He argues that Ms. Plunkett did not demonstrate superior knowledge, and her testimony and opinions were simply not helpful to the jurors, who reviewed the same evidence.

A trial court's determination of whether the facts in a harassment case are so complicated as to require expert testimony lies within its discretion. *Stone*, 350 S.W.3d at 21. The trial court specifically reviewed each of the questions seeking Ms. Plunkett's opinions in the context of section 490.065.1 and allowed the opinions that it determined would assist the trier of fact, and disallowed those it determined would not. The facts in the record, including the evidence of Ms. Plunkett's expertise and her use of professionally recognized objective standards that are not within a lay person's common knowledge, support the trial court's exercise of discretion. The trial court carefully exercised and did not abuse its discretion in determining that Ms. Plunkett's knowledge of EEOC enforcement guidance and standard human resources practices were not matters of such common knowledge as to invade the province of the jury in the context of this case.

C. *Plain Error—Witness Credibility*

Defendant argues that the court plainly erred in admitting Ms. Plunkett's testimony because it served to determine the credibility of plaintiffs' complaints about defendant's ineffective prevention measures, investigation, and remedial resources. Defendant failed to object to Ms. Plunkett's testimony on the ground that her testimony deprived the jury of its duty to determine witness credibility. A party may not raise or expand on appeal an objection to evidence that it did not make at trial. *Geary*, 321 S.W.3d at 288 n. 3. "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a).

The trial court did not abuse its discretion in permitting Ms. Plunkett to testify as an expert to her opinions based on EEOC enforcement guidance and generally accepted human resources practices. Point three is denied.

IV. *Verdict Directors*

In his final point, defendant contends that the trial court erred in (1) submitting jury Instructions 7 and 12 tendered by plaintiff "because these instructions misstated the law in that these instructions misled the jury and erroneously declared and applied the law because the instructions gave the jury [a] roving commission to consider conduct actionable under RSMo. § 213.111," and (2) refusing to give defendant's Instructions 6A and 11A because these instructions correctly declared the law by accurately setting forth the conduct actionable under section 213.111.

Instructions 7 and 12 were the verdict directors that were given to the jury on the racially hostile work environment counts. Instructions 6A and 11A were offered by defendant on these counts and were denied. During the jury instruction conference, the court asked for objections on the record, and the following transpired:

[THE COURT]: Do you have any objections you want to note on the record to the instructions that have been prepared after we all had our little conferences off the record, of course? I understand you initially wanted the verdict directors to include specific reference to hanging of the noose on July 18, 2006.

[Plaintiff's Counsel]: Correct.

[Defense Counsel]: Yes.

[THE COURT]: Instead it's worded the way it is as modified by the plaintiffs and the Court. Anything else you want to be heard other than those?

[Defense Counsel]: Do we have that instruction just to submit defendant's proposed—

[THE COURT]: Yeah, I've got it noted here. Yeah.

[Defense Counsel]: Okay. All right.

[THE COURT]: I'll file it in the court file.

Defendant did not make an objection on the record to Instructions 7 and 12 on the grounds that they misstated the law or gave the jury a roving commission. Further, defendant did not object on the record to the failure to give Instructions 6A and 11A on the ground that they correctly declared the law.

■ Rule 70.03 provides in part:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

*See also Johnson v. Union Pac. R.R. Co.,* 146 S.W.3d 14, 19 (Mo.App.2004). Failure

to object to a jury instruction at trial on the same grounds asserted on appeal preserves nothing for our review. *Id.* "[A]llegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case." Rule 84.13(a). Point four is denied.

## PLAINTIFFS' APPEAL

### I. *Remittitur*

■■■ In plaintiffs' first point, they assert that the trial court erred in granting remittitur of the punitive damages awards because those awards were not excessive and were fully justified.

The trial court ordered remittitur of the punitive damages from $350,000.00 for each plaintiff to $75,000.00 for each plaintiff. It explained its decision as follows:

> With regard to remittitur, the court finds that based upon the evidence in the light most favorable to plaintiffs and under the totality of the circumstances, the amount of the jury's original punitive damages verdicts of $350,000.00 to each individual Plaintiff are excessive and shock the conscience. The court finds that the remitted amounts of punitive damages to each Plaintiff clearly serve the purpose of punitive damages— that is, to punish and deter.

Pursuant to Rule 78.10(b), the trial court gave plaintiffs thirty days to file an election for a new trial on the issue of the amount of punitive damages. Plaintiffs thereafter rejected remittitur and accepted a new trial on the amount of punitive damages.

■■■ Section 213.111.2 permits the trial court to award punitive damages under the MHRA. Section 510.263.6 allows the trial court to order remittitur of punitive damages "based on the trial judge's assessment of the totality of the surrounding circumstances." The trial court has broad discretion in ordering remittitur. *Fierstein v. DePaul Health Ctr.*, 24 S.W.3d 220, 227–28 (Mo.App.2000). Absent an abuse of discretion, we will not disturb the trial court's exercise of its discretion to order remittitur. *Id.* "Remittitur is appropriate if, after reviewing the evidence in support of the jury's verdict, the court finds the verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiffs injuries and damages." *Id.* at 227. We must also remain "mindful" that the purpose of punitive damages is to punish and deter a party from performing similar wrongful conduct. *Id.* at 228; *see also Call v. Heard*, 925 S.W.2d 840, 849 (Mo. banc 1996).

The record does not reveal any abuse of discretion by the trial court in ordering remittitur of the punitive damage awards from $350,000.00 for each plaintiff to $75,000.00 for each plaintiff. The $75,000.00 in punitive damages awarded to each plaintiff is warranted to deter future workplace harassment, but is not so excessive as to shock the conscience.

The trial court did not abuse its discretion in ordering remittitur of the punitive damage awards. Point one of plaintiffs' appeal is denied.

### II. *Attorney's Fees*

■■■ For their second point, plaintiffs contend that the trial court erred in awarding attorney's fees in the amount of $326,000.00 because the court used inappropriately low hourly rates for plaintiffs' counsel. They assert that the uncontroverted evidence established that a reasonable hourly rate for plaintiffs' counsel was higher than the amount adopted by the trial court.

After judgment was entered, plaintiffs filed a motion to amend the judgment to

include an award of attorney's fees in the amount of $395,585.75 as the prevailing parties under section 213.111. They based this request on the following hourly rates: $450 for one attorney, $350 for one attorney, $325 for two attorneys, $275 for one attorney, $250 for one attorney, and $100 for one paralegal. Plaintiffs later amended this request and sought an additional $25,684.50 in attorney's fees incurred in responding to defendant's motion for a new trial, for a total fee request of $421,270.25. Defendant filed a response challenging the fee request in which it contested both the reasonableness of the number of hours and the reasonableness of the hourly rates.

The trial court awarded $326,000.00 in attorney's fees to plaintiff. It explained its award in the judgment:

3. Reasonable attorney fees in the amount of $326,000.00 are assessed against Defendant.... After considering the trial of plaintiffs' case and representation provided weighed with the success of respective claims, as well as the complexity of the case, the court finds the amount of its attorney fees award reasonable based upon consideration of many factors, including Plaintiffs' attorneys' risks in representation and underlying or back-up contingency fee contract basis of representation in this matter, results oriented analysis, traditional attorney-client contingency fees contracts in similar complex or labor intensive cases, various ranges of hourly attorney fee rates, the relationship between and success of the claims of plaintiffs, and time expended and for what purposes, including the following hours: lead counsel 650 hours; second counsel 200 hours; two mid-level fee based attorneys 150 hours; and one entry level attorney 160 hours; and all for which the court awards hourly attorney fee rates of $350 to lead counsel (subto-

taling $227,500), $300 to second counsel (subtotaling $60,000), $150 to mid-level counsel (subtotaling $22,500), and $100 to entry level counsel (subtotaling $16,000), for a total of $326,000.00 in attorney fees.

The court did not reduce the number of hours claimed for each attorney in its award, but it reduced the hourly rates claimed for each attorney.

■■■ We review the trial court's award of reasonable attorney's fees for an abuse of discretion. *Howard,* 332 S.W.3d at 792. "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* We consider the trial court to be an expert on the issue of attorney's fees because it is acquainted with all the issues of the case, and it may determine the amount of attorney's fees without the aid of evidence. *Essex Contracting, Inc. v. Jefferson County,* 277 S.W.3d 647, 656 (Mo. banc 2009). We presume an award of attorney's fees to be correct, and the complaining party has the burden to prove otherwise. *Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 170 (Mo.App.2006).

A party may recover attorney's fees when allowed by statute. *Williams v. Finance Plaza Inc.,* 78 S.W.3d 175, 184 (Mo. App.2002). Section 213.111.2 of the MHRA allows a trial court to "award court costs and reasonable attorney fees to the prevailing party." *See also Gilliland v. Missouri Athletic Club,* 273 S.W.3d 516, 523 (Mo. banc 2009).

Relevant factors in determining the reasonable value and amount of statutorily authorized fees, include:

1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for

similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Gilliland,* 273 S.W.3d at 523. Another relevant factor is the degree of responsibility imposed on the attorney for whom fees are sought. *Next Day Motor Freight, Inc. v. Hirst,* 950 S.W.2d 676, 680 (Mo.App. 1997); *Howard Const. v. Teddy Woods Const.,* 817 S.W.2d 556, 564 (Mo.App.1991).

Plaintiffs argue that they presented substantial evidence that the rates they sought for each of their attorneys were reasonable. Plaintiffs supported their request with affidavits setting out each attorney's academic credentials, professional experience, and current hourly rates; affidavits of other attorneys attesting to the reasonableness of the hourly rates sought and citing examples of attorneys who charged higher rates; and an exhibit consisting of pages from St. Louis Business Journal listing the "Largest Law Firms," which showed the hourly rate range for some of these firms. In its memorandum opposing the fee request, defendant challenged the rates requested by pointing out items in the affidavits and the exhibit that they contended did not support a conclusion that the hourly rates charged were reasonable or equivalent to hourly rates charged by comparable attorneys.

These materials and this dispute were presented to the trial court. It considered the relevant factors. It acted within its discretion in finding a reasonable hourly rate for each class of attorney, even though the rate was less than the hourly rate requested for each class of attorney. The trial court did not abuse its discretion

in awarding plaintiff $326,000.00 in attorney's fees. Point two of plaintiffs' appeal is denied.

### *ATTORNEY'S FEES ON APPEAL*

Plaintiffs have moved for an award of attorney's fees on appeal. We may award attorney's fees to a prevailing party on appeal in a section 213.111.2 action. *Claus v. Intrigue Hotels, LLC,* 328 S.W.3d 777, 789 (Mo.App.2010). Here, plaintiffs prevailed in defendant's appeal. The trial court is better equipped to hear evidence and argument on plaintiffs' request than we are. *Claus,* 328 S.W.3d at 789. Therefore, we will remand this request to the trial court to conduct a hearing to determine and award reasonable attorney's fees incurred by plaintiffs in responding to defendant's appeal.

### *Conclusion*

The judgment of the trial court is affirmed. The case is remanded to the trial court with directions to conduct a hearing to ascertain evidence and determine the reasonableness of the attorney's fees incurred by plaintiffs in responding to defendant's appeal, and to enter judgment accordingly.

KENNETH M. ROMINES and ROBERT M. CLAYTON III, JJ., concur.