Anthony Rex Gabbert, Judge
Introduction
The Kansas City Public School District (KCPS) appeals from a judgment entered upon a jury verdict finding in favor of Danny Holmes and Paul White (Plaintiffs collectively) on their claims alleging retaliation under the Missouri Human Rights Act (MHRA).[1] KCPS asserts three points on appeal. KCPS contends the circuit court, 1) erred in denying KCPS's motions for directed verdict and judgment notwithstanding the verdict, arguing that most of KCPS's alleged retaliatory acts occurred before Plaintiffs filed complaints of discrimination, and the remaining alleged retaliatory acts were not supported by substantial evidence, 2) erred in denying KCPS's motion for new trial for instructional error, arguing that the verdict directors on Plaintiffs' retaliation claims included a disjunctive list of alleged retaliatory acts, some or all of which were non-actionable events occurring before Plaintiffs engaged in protected activity or were not supported by substantial evidence, and 3) erred in awarding attorneys' fees to Plaintiffs in the requested amount because the factors for determining an appropriate fee award did not support Plaintiffs' request. We affirm.
Background and Procedural Information
In the light most favorable to the jury verdicts, the evidence at trial showed:
*608 KCPS employed Danny Holmes beginning in November 2013; he was forty-six years old at the time of trial. KCPS employed Paul White beginning in 1994; he was fifty years old at the time of trial. Both men were hired as patrol officers in the security department of KCPS and worked the midnight shift, also referred to as "watch one" or "dog watch."
In 2014, KCPS had approximately sixty officers on staff. Major Marcus Harris was the Security Director responsible for operating KCPS's security department. Sergeant Robert Vick was a first line patrol supervisor and the direct supervisor of Holmes and White.
In 2013, Sergeant Kevin LaBranche was assigned by Major Harris to the patrol division of the security department. Beginning in 2013, White became concerned with Sergeant LaBranche's behavior toward him. At that time, White had worked for KCPS nineteen years. Although LaBranche was the day shift supervisor, not White's direct supervisor, he was present when White's shifts ended. White believed LaBranche was singling him out daily and unjustifiably scrutinizing White's log sheets, while not subjecting others to such scrutiny. In June 2013, White initiated a meeting with Major Harris who had an open door policy for reporting complaints. White expressed concern he was being targeted because of his age and was concerned he could lose his job. Harris reassured White that Harris had heard nothing to that effect and told him not to worry, White would not lose his job.
One year later, White received a low rating on the "Teamwork" portion of a June 2014 performance evaluation, in part for having made the complaint to Harris. Sergeant Vick stated in the evaluation: "Officer White had issues with his work activities being scrutinized by another first line supervisor." Sergeant Vick confirmed at trial that White made this complaint after Sergeant LaBranche suggested to Major Harris that LeBranche be allowed to review the activity logs of outgoing officers to "see where they've been and what they had done, if their reports were complete and proper."
Also justifying White's low "teamwork" rating was that "Officer White also had issues with working mandatory overtime during the last two weeks of school to comply with a mandate issued by the superintendent to provide extra security at the high schools." This comment stemmed from White complaining to a Union representative in April 2014 that overtime was being improperly assigned. Fellow officer, Holmes, had reported to Sergeant Vick the same concerns; dog shift officers were required to perform mandatory overtime and day shift was exempt. When Holmes's concerns were not taken seriously, Holmes and other officers, including White, spoke with the Union. Immediately thereafter, Sergeant Vick advised them that anyone complaining to the Union would "be severely dealt with."[2]
The mandatory overtime continued until the end of the school year. Hamburg, a younger officer, received the same mandate for the shift ending just before Plaintiffs' shift (evening shift). Hamburg testified that when he complained, the rule changed the following day to allow voluntary assignments prior to mandatory overtime being enforced.
*609 In August 2014, White was interviewed regarding a formal age discrimination complaint Holmes filed with the human resources department of KCPS. White reported in that interview that the first day he was held over for mandatory overtime, Holmes told him that Sergeant LaBranche apologized for holding Holmes over, but that was the only way they could get White to work due to White's seniority, and they were "trying to get rid of the old regime." White reported a belief that officers were being harassed because of their age and seniority; he believed the "older regime" was being terminated. He reported that he "had witnessed ... how the younger officers were getting better treated."
LaBranche was also the sergeant Holmes answered to when he completed his shifts. Prior to mandatory overtime starting, Holmes testified that his first meeting with LaBranche regarded a report Holmes completed during a shift he worked with White. During that shift, Holmes and White assisted with getting three young males out of a vacant school that was considered a dangerous building. After accomplishing this, White made a telephone notification to Sergeant Vick. Holmes told White that he would complete the written report because Holmes was more familiar with those types of reports and already knew the names of several of the assisting Kansas City police officers. When Holmes gave the report to LaBranche, LaBranche told him, "Don't let the older guys take advantage of you" and wanted to know why White did not complete the report; Holmes told LaBranche that he volunteered. LaBranche told Holmes, "Well, we're trying to get rid of the old regime; don't let them take advantage of you."
In May 2014, Holmes reported concerns to KCPS's Human Relations Department; it can be inferred that these concerns included allegations of age discrimination because the Employee and Labor Relations Specialist for KCPS, Marilyn Overton, mailed Holmes a "Discrimination-Harassment Complaint Form" on May 29, 2014. The completed form included allegations of age discrimination.
Like White, on June 13, 2014, Holmes received a low rating in the area of "teamwork" on his performance evaluation completed by Sergeant Vick. Sergeant Vick supported the low rating by stating Holmes "became upset during the last two weeks of school when the superintendent issued a mandate requiring extra security personnel in the high schools. He was required to work overtime as a result of the mandate along with other officers as well as management." This was the only low rating Holmes received.
Holmes returned his completed "Discrimination-Harassment Complaint Form" on July 31, 2014. Therein he alleged that supervisors were scheduling overtime in a discriminatory pattern based on age. He alleged that supervisors attempted to sow discontent between the shifts and bully and harass members of the union. Officers were told that anyone going to the Union with their complaints would be "dealt with" and "terminated." Among other complaints, Holmes reported that Sergeant Vick told him he had to work overtime because the "old regime knew the policy." Officers were told they would be forced to work over every day and there was nothing they could do about it. Holmes alleged that the conduct was targeted only against the older members of staff and that the supervisors had made repeated comments to Holmes and others that they were "getting rid of the old guard." Holmes asked KCPS to investigate, train supervisors on the proper policy regarding mandatory overtime, and instruct regarding the illegality *610 of implementing action based on age or seniority.
KCPS's Employee and Labor Relations Specialist, Overton, investigated Holmes's formal complaint by interviewing LaBranche and Vick as the persons allegedly responsible for the discrimination, as well as witnesses identified by Holmes, including White. When interviewed by Overton, Holmes repeated the concerns raised in his formal complaint and gave additional examples supporting his allegations. Holmes reported that in his work evaluation, he was given a low score for "teamwork" and believed it was because he complained about the overtime issues. Holmes stated that an employee demoted from a supervisory position told him that supervisors would discuss terminating tenured employees during meetings. When asked about this, Sergeant LaBranche stated that during supervisory meetings the work performance of veteran officers would sometimes be discussed as well as "how the older officers don't like to change." When White was interviewed, he affirmed his belief that officers were being harassed because of age and seniority.
Officer William Hamburg was interviewed by Overton. He told Overton that Sergeant Vick told him to be careful who he was associating with. He believed Vick referenced the older officers who did not want to "convert to the new ways of doing things."
Upon completing her investigation Overton concluded that the overtime procedure was not being properly followed. She found no evidence of age discrimination, however, because officers younger than forty were also subject to the overtime procedure. Security Director Harris issued a "Letter of Reprimand" in October 2014 to Sergeant Vick for his role in not following established overtime policy.
The improper application of overtime ended in May 2014 when the school year ended, and began again in August 2014 when the new school year began. The August overtime lasted approximately three weeks. After the school year was underway and the need for extra coverage faded out, the overtime ended. Almost immediately thereafter and effective September 9, 2014, however, the shift schedule for patrol officers changed. As officers on the midnight shift, Holmes's and White's schedules changed in the following manner: before the shift change, Holmes and White started their shifts at 10:00 p.m. and ended their shifts at 6:30 a.m., before students arrived at school. After the shift change, Holmes and White started their shifts at 11:30 p.m. and ended their shifts at 8:00 a.m. This required Holmes and White to conduct intake of students at the end of their shifts. The shift change reduced the number of officers on duty during intake, one of the most crucial times of the school day in terms of safety. It replaced fresh, morning officers with night shift officers who had worked all night and were already weary. In deposition testimony, Sergeant Vick stated that the shift change was made as punishment for officers' complaints. At trial, Vick testified that his prior testimony was a mistake; he meant to say that, in response to officers' complaints regarding overtime, the new schedule was designed to help them by reducing overtime. According to Vick's testimony, however, the need for overtime had already ended when the schedule change was implemented.
KCPS's internal investigation into Holmes's complaints concluded in October 2014. Holmes and White filed charges of discrimination with the Missouri Commission on Human Rights that same month. On June 29, 2015, after receiving notices of right to sue, Holmes and White filed suit against KCPS alleging discrimination and retaliation under the MHRA. On December *611 9, 2016, a jury returned verdicts in favor of KCPS on Plaintiffs' discrimination claims and in favor of Plaintiffs on their retaliation claims. The jury awarded Holmes and White $3,000 each in compensatory damages. The court entered judgment on the verdicts January 24, 2017. Plaintiffs filed a motion to amend the judgment to award attorneys' fees and costs, and KCPS filed a motion for judgment notwithstanding the verdict (JNOV) or new trial. On May 5, 2017, the trial court granted Plaintiffs' motion for attorneys' fees and costs and denied KCPS's motion for JNOV and new trial. This appeal follows.
Point I - Motions for Directed Verdict and JNOV
In its first point on appeal, KCPS contends the circuit court erred in denying its motions for directed verdict and JNOV, arguing Plaintiffs failed to make submissible claims for retaliation under the MHRA because most of the alleged retaliatory acts occurred before Plaintiffs filed their complaints of discrimination, and the remaining alleged retaliatory acts were not supported by substantial evidence of adverse employment action resulting from protected activity.
To withstand a motion for JNOV, Plaintiffs needed to offer substantial evidence to support every fact essential to liability. Soto v. Costco Wholesale Corp. , 502 S.W.3d 38, 48 (Mo. App. 2016).
A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence. Whether the plaintiff made a submissible case is a question of law that this Court reviews de novo. To determine whether a directed verdict or judgment notwithstanding the verdict should have been granted this Court applies essentially the same standard. To determine whether the evidence was sufficient to support the jury's verdict, an appellate court views the evidence in the light most favorable to the verdict. A motion for directed verdict or JNOV should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence.
Ellison v. Fry , 437 S.W.3d 762, 768 (Mo. banc 2014) (citations omitted). Because cases involving claims of retaliatory motive are inherently fact-based and often depend on inferences rather than direct evidence, circumstantial evidence that tends to support an inference of retaliatory motive is sufficient. Soto , 502 S.W.3d at 48.
It is an unlawful discriminatory practice for an employer to "retaliate or discriminate in any manner" against an employee who "has opposed any practice prohibited" by the MHRA or "has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to" the MHRA. § 213.070(2). To make a submissible retaliation case under the MHRA, Plaintiffs were required to establish: (1) They complained of discrimination; (2) KCPS took adverse action against them; and (3) a causal relationship existed between the complaint and the adverse action. Soto , 502 S.W.3d at 48. Causation, under the version of the MHRA applicable to Plaintiffs' claims, required a showing that the complaint of discrimination was a "contributing factor" to the adverse employment action. Id. "A contributing factor is a condition that contributes a share in anything or has a part in producing the effect." Id. (quoting Turner v. Kansas City Pub. Sch. , 488 S.W.3d 719, 723 (Mo. App. 2016) ). If Plaintiffs' protected activity was even one contributing factor in adverse employment action taken by KCPS, there was unlawful retaliation.
*612 Soto , 502 S.W.3d at 48. " 'Our Missouri Supreme Court has explained that, although federal law requires a retaliation claimant to demonstrate that an 'adverse employment action' has occurred ('adverse employment action' generally meaning some change in pay, benefits, seniority, responsibility, etc.,), the MHRA does not." ' Mignone v. Missouri Department of Corrections , 546 S.W.3d 23, 36 (Mo. App. 2018) (quoting Walsh v. City of Kansas City , 481 S.W.3d 97, 106 (Mo. App. 2016) ). "[A] plaintiff alleging unlawful retaliation need only establish that, as a direct result, he or she suffers any damages." Id. (internal quotation marks and citations omitted).
A retaliation claim may survive even if the underlying discrimination or harassment claim is unsuccessful. Soto , 502 S.W.3d at 48. "[I]t is irrelevant to a claim of retaliation that the act complained of was not legally actionable. The only issue is whether the person making the complaint has a reasonable good faith belief that there were grounds for the claim of discrimination or harassment." Id. (internal quotation marks and citations omitted).
Because a judgment notwithstanding the verdict is a motion to have judgment entered in accordance with a motion for directed verdict, a sufficient motion for a directed verdict is required to preserve the motion for judgment notwithstanding the verdict and for appeal. Rule 72.01(a) requires that a motion for directed verdict 'state the specific grounds therefore.' A party cannot save an insufficient motion for directed verdict by making specific allegations in the motion for JNOV. Issues not raised in a motion for directed verdict, but raised in the motion for JNOV, are not preserved for appellate review of the motion for JNOV.
Wolf v. Midwest Nephrology Consultants, PC. , 487 S.W.3d 78, 83 (Mo. App. 2016) (internal citations and quotation marks omitted).
We find the grounds specified in KCPS's motion for directed verdict significantly different than those argued on appeal.
At trial, KCPS argued three grounds for Plaintiffs' alleged failure to make submissible claims of retaliation under the MHRA: (1) insufficient evidence to support a reasonable, good faith belief that age discrimination had occurred when Plaintiffs' pre-May 2014 complaints were made, (2) insufficient evidence Plaintiffs were subject to any adverse employment action, and (3) insufficient evidence of a causal connection between complaints of discrimination and the alleged adverse employment actions. On appeal, KCPS asserts the following grounds for Plaintiffs' alleged failure to make submissible claims of retaliation: (1) most of the alleged retaliatory acts occurred before Plaintiffs filed their complaints of discrimination, and (2) for the remaining alleged retaliatory acts, there was insufficient evidence of adverse employment action taken as a result of protected activity.
We find that KCPS's first claim regarding timing was not articulated to the trial court. We disagree with KCPS's contention that it sufficiently preserved this issue by generally alleging Plaintiffs had not presented sufficient evidence of adverse action prompted by protected activity. In KCPS's motion for JNOV, KCPS essentially conceded Plaintiffs made complaints of discrimination prior to the alleged retaliatory acts. KCPS argued: "Plaintiff's retaliation claims are predicated on complaints of age discrimination made prior to May of 2014 .... The evidence at trial, however, conclusively showed a complete lack of good faith or reasonable belief that age discrimination had occurred when Plaintiffs made these complaints. " Lack of *613 a reasonable belief age discrimination had occurred at the time a complaint was made is a distinct issue from whether a complaint was actually made at a given time and could be linked to retaliation thereafter.
Where KCPS acknowledged complaints of age discrimination were made prior to May 2014 and argued other grounds for believing Plaintiffs failed to make a submissible case of retaliation in relation to those complaints, KCPS failed to put its timing claim before the trial court.[3] "We will not convict a trial court of error on an issue that it had no chance to decide." Reed v. Kansas City Missouri School District , 504 S.W.3d 235, 246 (Mo. App. 2016) (internal citation and quotation marks omitted). KCPS, therefore, waived the timing argument it makes for the first time on appeal.[4]
What remains of KCPS's first point is its contention that, for the remaining alleged retaliatory acts , there was insufficient evidence of adverse employment action taken as a result of protected activity. Specifically, KCPS argues that the only alleged retaliatory act occurring after Plaintiffs' complaints was the September 2014 shift change which delayed shift beginning/ending times by ninety minutes. KCPS argues the shift change cannot be considered retaliatory as a matter of law because it was applied "across the board" and, further, Plaintiffs were not damaged by it. Yet, because KCPS failed to preserve its claims regarding all alleged acts of retaliation, and does not dispute that proof of at least some of those acts (post-complaint) would justify submitting the case to the jury, review of KCPS's shift change argument can bring no relief on this point.[5] Because the requisite elements for submitting a retaliation claim to the jury were arguably met with proof of other alleged acts of retaliation for which KCPS failed to preserve error, KCPS's entire point fails. See *614 The Schumacher Group, Ltd. v. Schumacher , 474 S.W.3d 615, 624 n.11 (Mo. App. 2015).
Moreover, we note that, while KCPS focuses on the sufficiency of the evidence related to how the jury was instructed, submissibility does not hinge on jury instruction. KCPS's motion for directed verdict was made prior to instruction discussions. The court, therefore, did not consider the evidence as applied to specific instructions; the court considered the evidence in light of the elements required to support each claim. Dodson v. Ferrara , 491 S.W.3d 542, 551 (Mo. banc 2016). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." Id. at 552. "If the facts are such that reasonable minds could draw differing conclusions, the issue becomes a question for the jury, and a directed verdict is improper."
With regard to the elements of White's retaliation claim, drawing all reasonable inferences from the evidence, White presented sufficient evidence that: (1) In June 2013 White expressed concern to Security Director Harris that he was being unfairly targeted by Sergeant LaBranche because of his age; (2) thereafter White received a low rating on a performance evaluation due to this complaint, was subjected to overtime other officers were not subjected to, and was punished with a schedule change after complaining about the improper assignment of overtime; (3) a causal relationship existed between the complaints and these actions, and; (4) White was thereby damaged. Likewise, Holmes presented sufficient evidence that: (1) In April 2014 Holmes complained to his Union representative about the improper assignment of overtime, and the Union representative discussed this complaint with KCPS management. It can be reasonably inferred that this complaint encompassed allegations of age discrimination and/or Holmes himself made a direct, contemporaneous age discrimination complaint to KCPS because KCPS mailed an "Employee Discrimination-Harassment Complaint Form" to Holmes on May 29, 2014. Holmes's completed form included allegations that the improper assignment of overtime was age related; (2) thereafter Holmes received a low rating on the "Teamwork" portion of a performance evaluation, was subjected to overtime other officers were not subjected to, and was punished with a schedule change after complaining about the improper assignment of overtime; (3) a causal relationship existed between the complaints and the adverse action, and; (4) Holmes was thereby damaged. Additionally, if believed by the jury, other adverse employment actions made after White's and Holmes's complaints included the continuation of mandatory overtime in violation of policy, threats that Plaintiffs would be severely dealt with for making grievances, management instructing younger employees to disassociate from Plaintiffs, and denial of time off/vacation time.
KCPS's first point on appeal is denied.
Point II - Instructional Error
In its second point on appeal, KCPS contends that the circuit court erred by erroneously instructing the jury on Plaintiffs' retaliation claims by including a disjunctive list of alleged retaliatory acts, some or all of which were non-actionable events occurring before Plaintiffs engaged in protected activity or were not supported by substantial evidence.
Whether a jury was properly instructed is a question of law this Court reviews de novo. This Court reviews the record in the light most favorable to submission of the instruction. Any issue submitted to the jury in an instruction *615 must be supported by substantial evidence from which the jury could reasonably find such issue. Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case. If the instruction is not supported by substantial evidence, there is instructional error, which warrants reversal only if the error resulted in prejudice that materially affects the merits of the action.
Hayes v. Price , 313 S.W.3d 645, 650 (Mo. banc 2010) (internal quotation marks and citations omitted).
"To preserve a claim of instructional error, a specific objection must be made stating 'distinctly the matter objected to and the grounds of the objection.' The same objection must also be raised in the motion for a new trial." Carroll v. Kelsey , 234 S.W.3d 559, 562 (Mo. App. 2007) (quoting Rule 70.03). "Timely objections to an instruction are required as a condition precedent to appellate review in order to afford the trial court an opportunity to correct any mistakes immediately and inexpensively without risking the delay and expense of an appeal and a retrial." Ross-Paige v. Saint Louis Metropolitan Police Department , 492 S.W.3d 164, 170 (Mo. banc 2016).
Plaintiffs proffered Instructions No. 9 and No. 11, verdict directors for Holmes's and White's retaliation claims. These read:
Your verdict must be for Plaintiff Danny Holmes/Paul White and against Defendant Kansas City Public School District on the claim of unlawful retaliation if you believe:
First, Plaintiff made a complaint about what he reasonably and in good faith believed was age discrimination, and
Second, either
Beginning in May 2014, Plaintiff was assigned mandatory overtime in violation of the School District's established mandatory overtime policy, or
Management instructed younger employees not to talk to Plaintiff, or
Management threatened Plaintiff that if he went to the Union about his Age Discrimination Complaint 'he would be severely dealt with,' or
Plaintiff was denied requested time off or vacation time, or
In the fall of 2014, Security Department management permanently changed the timing of Plaintiff's work shift, and
Third, Plaintiff's complaint of age discrimination was a contributing factor in any one or more of the actions in the preceding paragraph, and
Fourth, as a direct result of such conduct, Plaintiff sustained damage.
At trial, KCPS objected to Instruction No. 9, the verdict director, for Holmes's retaliation claim on the following grounds:
We believe the second element in instruction No. 9 should mirror the instruction in No. 8 based on the first elements stating the date of May 2014. We object to that as well. We don't believe that the evidence supports that. Secondly, it allows the plaintiff to have a roving commission from when the complaint is made.
Instruction No. 8 was the verdict director on Holmes's age discrimination claim and stated:
Your verdict must be for Plaintiff Danny Holmes and against Defendant Kansas City Public School District on age discrimination if you believe:
First, Defendant subjected Plaintiff to circumstances that were sufficiently severe or pervasive enough to create an *616 abusive, intimidating, hostile or offensive working environment, and
Second, Plaintiff's age was a contributing factor in such conduct, and
Third, as a direct result of such conduct, Plaintiff sustained damage.
KCPS objected to Instruction No. 11, the verdict director for White's retaliation claim, on the following grounds:
Your Honor, the same objection as we had to instruction No. 9. I would just add also that there's discussion in the second element of instruction No. 11 that discusses events that we believe took place before and after the alleged protected act. And that's all I would add to our objection, and that would be included in instruction No. 9 and 11.
KCPS did not specify what events it believed took place "before and after" the "protected act," what KCPS believed constituted the "protected act," or when KCPS believed the "protected act" occurred. KCPS's proffered replacement instructions were as follows:
Your verdict must be for Plaintiff Danny Holmes/Paul White and against Kansas City Public School District on the claim of retaliation if you believe:
First, Plaintiff made a complaint about what he reasonably and in good faith believed was age discrimination, and
Second, Defendant subjected Plaintiff to circumstances that were sufficiently severe or pervasive enough to create an abusive, intimidating, hostile or offensive working environment, and
Third, Plaintiff's complaint of age discrimination was a contributing factor in such conduct, and
Fourth, as a direct result of such conduct, Plaintiff sustained damage.
In KCPS's motion for new trial KCPS argued three things. First, the verdict directors misdirected the jury because the events constituting retaliation were erroneously listed disjunctively because all listed events were not independently actionable in that: 1) Assignment of mandatory overtime was not actionable because there was no substantial evidence showing Plaintiffs were targeted for overtime assignments, 2) The shift change was not actionable because it applied across the board to all employees, and 3) The other events were not actionable because they were "petty slights and annoyances" not rising to the level of adverse employment action.
Second, KCPS contended the verdict directors were erroneous because the retaliation verdict director should have been presented under a hostile work environment theory due to the age discrimination claim being presented on a hostile work environment theory.
Third, KCPS contended the verdict directors should have specified the complaints at issue and tied those complaints to specific events alleged to have occurred in retaliation. KCPS argued,
[T]he record included evidence that both formal and informal complaints had been made a various times between May and October of 2014. Without specifying the complaints at issue and tying those complaints to specific events alleged to have occurred in retaliation, the verdict directors create a propensity for mismatch between protected activity and the acts of reprisal that are necessary to sustain a retaliation claim under the MHRA.
On appeal, KCPS first contends the verdict directors were erroneous because the disjunctive list of alleged retaliatory acts contained events occurring before Plaintiffs engaged in protected activity; KCPS argues Holmes first engaged in protected activity in July 2014 by filing a complaint with KCPS's Human *617 Resources, and White first engaged in protected activity in October 2014[6] by filing a charge with the Missouri Commission on Human Rights. These claims were never articulated to the trial court in objection to the instructions at trial, and were not made at all in the motion for new trial.[7]
In its motion for new trial, KCPS stated that "the record included evidence that both formal and informal complaints had been made at various times between May and October of 2014." KCPS argued that specific complaints should have been linked with specific allegations of retaliation because "the jury might have rejected the idea that Plaintiff Holmes made a good faith complaint of discrimination with his informal complaint to human resources in May 2014, but agreed that he made a good faith complaint with the filing of a formal administrative charge in October 2014."[8] Hence, KCPS agreed in its motion for new trial that the evidence was such that the jury could have accepted the idea that Holmes made a good faith complaint of discrimination in May 2014. "Because [KCPS] did not present these claims to the trial court, Rule 84.13(a) precludes this Court from considering them now." Barkley v. McKeever Enterprises, Inc. , 456 S.W.3d 829, 840 (Mo. banc 2015). " 'Where an alleged error on appeal relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal.' " Id. (quoting Giddens v. Kansas City S. Ry. Co. , 29 S.W.3d 813, 823 (Mo. banc 2000) ). "[W]hen counsel stated he had only a certain objection to make, he thereby limited the trial court's examination of the instruction to that one objection, and limits himself to that objection on appeal." Id. at 841 (quoting Reid v. St. Louis & S. F. Ry. Co. , 187 S.W. 15, 18 (Mo. 1916)).
A point on appeal must be based upon the theory voiced in the objection at trial and an appellant cannot expand or change on appeal the objection as made. A point on appeal may not enlarge or change the objection made at trial. When the point on appeal contends that an instruction is erroneous on a different ground than was asserted in the objection made at trial, we may not review that error on appeal.
Kline v. City of Kansas City , 334 S.W.3d 632, 647 (Mo. App. 2011) (internal quotation marks and citations omitted).
We find that KCPS never made the timing arguments that comprise the majority of KCPS's second point on appeal. As such, they are waived.
*618 Likewise, KCPS argues for the first time on appeal that, while both Holmes and White made complaints in April 2014 to the Union, these were not protected acts under the MHRA because they were not complaints about age discrimination. Yet, as discussed above, in its motion for new trial KCPS stated that, "Plaintiff's retaliation claims are predicated on complaints of age discrimination made prior to May of 2014 .... The evidence at trial, however, conclusively showed a complete lack of good faith or reasonable belief that age discrimination had occurred when Plaintiffs made these complaints. "[9] The only complaints made prior to May 2014 were White's age discrimination complaint in June 2013 and Plaintiffs' Union complaints in April 2014. We note that, both Holmes's and White's verdict directors include as an adverse employment action "that Management threatened Plaintiff that if he went to the Union about his Age Discrimination Complaint 'he would be severely dealt with.' " The evidence at trial showed that this threat was made immediately after Plaintiffs' April 2014 meeting with the Union. If KCPS believed the Union complaint did not include age discrimination, KCPS should have directed the court's attention to this assumption within the verdict directors. KCPS did not and has waived this argument on appeal.
Additionally, KCPS did not argue, either at trial or in its motion for new trial, that there was no evidence White was denied requested time off or vacation. This argument is also waived.
The claims remaining under KCPS's second point on appeal are: 1) management's instruction to a younger employee to not to talk to Plaintiffs was improperly included in the verdict directors as this was mere "snubbing" which is not an adverse action sufficient to support a retaliation claim, and there was no evidence Plaintiffs were damaged, and 2) the shift change was not actionable because it applied to both young and old officers and caused no damage to Plaintiffs.
The lack of damages arguments were never articulated to the trial court at trial or in KCPS's motion for new trial. They are, therefore, waived. Although the remaining contentions were not articulated at trial, they were, however, included in some form in KCPS's motion for new trial. Even if KCPS's inclusion of these claims in its motion for new trial sufficiently preserved these arguments, we find them meritless nonetheless.
Holmes testified at trial that the working conditions during the shift change in the fall of 2014 were "a little rough" because some of the officers Holmes trained had been told not to talk to him. When Overton investigated Holmes's complaint of discrimination she interviewed Travis Hamburg, a younger officer, who told her that Sergeant Vick told him to be careful who he was associating with. Hamburg believed Vick was referencing older employees who "did not convert to new ways of doing things." Sergeant Vick gave both Holmes and White poor performance ratings in the area of teamwork for their "attitude," stemming from Vick's belief *619 they were "poisoning the department" and "hurting the morale of the department" by discussing their concerns among fellow employees. He testified that Holmes was an experienced officer who other officers looked up to. He expressed that new officers could be poisoned by someone with a bad attitude and that could "spread among the ranks." He testified that White had also been involved in such "break room talk" and these discussions among the newer officers prompted this low rating.
Hamburg, who worked the shift prior to Plaintiff's shift, was also advised that officers on his shift would be required to report to work four hours early, and that the overnight shift would stay four hours late every day. Hamburg complained to a Union representative regarding his shift change and testified that the following day his shift was able to first volunteer for overtime before it became mandatory. The same did not occur for Plaintiffs' shift after Plaintiffs complained.
Here, KCPS relies on the expertise of senior officers to train and mentor new officers, who must then work in partnership to complete tasks and protect each other. We cannot conclude that instructing fledgling officers to avoid, not talk to, and shun the advice of a senior officer because that officer made an age discrimination complaint cannot be considered retaliatory in the context of the MHRA. The amount of damages Plaintiffs sustained as a result of this behavior was a question most appropriately left to the jury.
With regard to the August 2014 shift change, Sergeant Vick testified in a deposition that it was implemented as punishment for officers' complaints. The fact that the shift change was applied to all officers on that shift, including younger officers, does not negate the possibility that it was done in retaliation for Holmes's and White's complaints of age discrimination and in further pursuit of encouraging older officers (who management perceived to dislike change) to voluntarily remove themselves from employment. The shift change added substantial new duties to the end of Plaintiffs' shift.
Point two is denied.
Point III - Attorneys' Fees
In its third point on appeal, KCPS contends the circuit court abused its discretion in awarding attorneys' fees to Plaintiffs in the requested amount of $226,562 because the factors for determining an appropriate fee award did not support Plaintiffs' request. KCPS argues Plaintiffs achieved only a nominal degree of success, failed to provide a proper lodestar calculation of counsel's fees, and did not identify any countervailing factors that would otherwise justify the fee award.
"We review the trial court's award of reasonable attorney's fees for an abuse of discretion." Hill v. City of St. Louis , 371 S.W.3d 66, 81 (Mo. App. 2012). We deem the trial court an expert on fees in a given case due it's familiarity with all issues in the case and the character of the legal services rendered. See Essex Contracting, Inc. v. Jefferson Cty. , 277 S.W.3d 647, 656-57 (Mo. banc 2009) (quoting Nelson v. Hotchkiss , 601 S.W.2d 14, 21 (Mo. banc 1980) ). The trial court may determine attorney fees without the aid of evidence. Id. "We presume an award of attorney's fees to be correct, and the complaining party has the burden to prove otherwise." Hill , 371 S.W.3d at 81 (internal citation omitted). We will only reverse if it is shown that the award of attorney fees was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. Id.
Appellate courts have identified several factors trial courts should consider *620 when making a determination as to reasonable attorney fees. Gilliland v. Missouri Athletic Club , 273 S.W.3d 516, 523 (Mo. banc 2009). These include: (1) the rates customarily charged by the representing attorneys and local attorneys who handle similar work; (2) the number of hours reasonably spent on the litigation; (3) the nature of the services provided; (4) the degree of necessary professional expertise; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) "the vigor of the opposition." Id.
"Section 213.111.2 of the MHRA allows a trial court to 'award court costs and reasonable attorney fees to the prevailing party.' " Hill , 371 S.W.3d at 81. "Section 213.111.2 is structured to recognize attorneys' fees as a matter of course to prevailing claimants." Gilliland , 273 S.W.3d at 523. The reasons for authorizing attorneys' fees for a prevailing party under the MHRA are twofold: " '(1) to fully make the plaintiff whole by compensating him or her for the costs of bringing suit and (2) to deflect that discrimination may result in nominal or small monetary damages." ' DeWalt v. Davidson Surface Air , 449 S.W.3d 401, 404 (Mo. App. 2014) (quoting Coyle v. City of St. Louis , 408 S.W.3d 281, 291 (Mo. App. 2013) ). "In human rights cases, the amount of the verdict or judgment may have little bearing on the amount of attorneys' fees." Gilliland , 273 S.W.3d at 523. While a court might consider the extent to which a plaintiff prevailed on some claims and not others, "[t]he efforts of the prevailing attorneys ... should not be discounted where the effort and proof were the same for the claims on which [the plaintiff] prevailed and those on which [the plaintiff] did not." Id. at 523-24.
KCPS's primary contention is that, because Plaintiffs prevailed on only their retaliation claims, the fee award should have been significantly reduced if not completely denied. KCPS relies on Trout v. State , 269 S.W.3d 484 (Mo. App. 2008) and Hensley v. Eckerhart , 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), ignoring our Missouri Supreme Court's post- Trout decision in Gilliland which sides with Eckerhart's minority. See Walsh , 481 S.W.3d at 115. In Walsh v. City of Kansas City we relied on Gilliland in upholding a circuit court's refusal to reduce a $346,500 award of attorneys' fees in proportion to Walsh's success at trial. Id. Walsh had prevailed on only two of seven retaliation claims. Id. We concluded:
[W]hile Trout may correctly state the views of the majority of the United States Supreme Court in Hensley v. Eckerhart , the Missouri Supreme Court in Gilliland adopted the minority position: where a plaintiff's various claims and the legal work required to substantiate those claims are interrelated and overlapping, it is inappropriate to reduce or discount the plaintiff's recoverable attorney's fees based on the fact that the plaintiff achieved only limited success on its interrelated claims.
Id. KCPS makes no effort to argue that Plaintiffs' claims were not interrelated; KCPS acknowledges in its brief that "[t]he evidence was virtually identical for the age discrimination and retaliation claims." Indeed, even if Plaintiffs submitted no discrimination claims to the jury, they still had to defend their complaints of discrimination because KCPS argued Plaintiffs never made good faith complaints as required for a retaliation claim.
KCPS also focuses on the jury's $6,000 award of compensatory damages and suggests that this "nominal" award requires reduction of attorney fees. KCPS contends that, because the court made no reduction in the fee award, the trial court failed to consider the degree of *621 success obtained. Yet, degree of success in civil rights claims is not wholly measured by monetary damages and, as noted above, one of the reasons for authorizing attorneys' fees under the MHRA is "to deflect that discrimination[10] may result in nominal or small monetary damages." DeWalt , 449 S.W.3d at 404. While KCPS characterizes the $6,000 compensatory award as "a compromise verdict that does not truly reflect a determination of liability or damages based on the evidence, but suggests only that the jury made the award for collective appeasement," this is contrary to our presumption that the jury followed the trial court's instructions. Dieser v. St. Anthony's Medical Center , 498 S.W.3d 419, 435 (Mo. banc 2016). The jury was instructed that it could only award damages if retaliation had occurred.
KCPS argued to the jury that Plaintiffs were attempting a "shake down" and entitled to nothing: "So [Holmes is] thinking, you know what, I don't want to work the overtime, but I'll sue them and try to get a jury to give me some money. This is a shake down." KCPS asked Holmes on cross-examination, "Mr. Holmes, you're here asking for money, aren't you?" Holmes replied, "I just want some resolution, I want some closure, and I understand that monetary award, whatever my lawyers present, that's - you know, that's not - I'm not, you know, asking for any set dollar amount. I just want some closure and I want everything to be fixed." Holmes testified that because the investigation into his concerns had been handled exclusively by KCPS, he filed a complaint with the Missouri Human Rights Commission so "[a]t least they would give an independent stand on what's actually going on based on the evidence." Holmes testified that he very much liked his job but wanted KCPS to "go by the rules" and not selectively enforce rules or use overtime as a means of punishment. Plaintiff White was never asked at trial about seeking monetary damages.
Given that neither Holmes nor White testified to quantifiable damages, and Holmes testified that monetary damages were insignificant compared to his desire for resolution and closure, the $6,000 compensatory award does not necessarily represent a low degree of "success" in this matter or that liability was not truly determined.[11] Moreover, allegations of retaliation under the MHRA necessarily involve claims that Plaintiffs attempted to resolve an issue of concern by bringing attention to that concern, only to be retaliated against. While damages are a necessary part of litigating such a claim, it does not follow that every plaintiff filing suit is seeking vindication solely through the recovery of monetary damages. While this jury may have only had authority to award monetary damages, we cannot agree with KCPS that the $6,000 award of compensatory *622 damages cheapens the ultimate conclusion reached by this jury - KCPS violated the MHRA by retaliating against Holmes and White after they complained of discrimination.
KCPS further contends the trial court erred in its award of fees because "Plaintiffs have filed run-of-the-mill MHRA claims with no special import or significance on the development of civil rights law in Missouri or elsewhere." KCPS relies heavily on DeWalt v. Davidson Surface Air to advocate reducing fees for what it deems Plaintiffs' insignificant civil rights claims. 449 S.W.3d 401. DeWalt , however, found an abuse of discretion in a trial court's failure to consider the nature and importance of the civil rights subject matter, instead "rel[ying] principally on the size of the verdict in measuring DeWalt's degree of success." Id. at 406. DeWalt opined:
This is not to say that the size of the verdict in an MHRA case is irrelevant. As we and other courts have stated, the degree of success is crucial. That success is partially measured by how much of the plaintiff's requested relief he actually recovered. But courts must keep in mind that even small verdicts in MHRA cases may still reflect a high degree of success when properly considered in light of the nature and importance of the subject matter in the particular case. We note that not all civil rights claims are of the same nature or of equal importance. Therefore, the consideration of this factor, and the others, as well as the ultimate determination of fees requires a case-specific analysis. Nothing we say herein detracts from the trial court's discretion and expertise in fashioning the appropriate award in a particular case, as long as proper consideration is given to all of the relevant factors.
Id.
KCPS fails to prove the trial court neglected to consider all relevant factors or otherwise abused its discretion in awarding attorneys' fees.[12]
KCPS's third point on appeal is denied.
Prior to oral argument, Plaintiffs filed a motion for attorneys' fees on appeal and the motion was taken with the case. "Section 213.111.2 allows a court to award reasonable attorneys' fees to a prevailing plaintiff in an MHRA case." McCrainey , 337 S.W.3d at 756. "Where a plaintiff has prevailed in an action under the MHRA, the court should award attorneys' fees unless special circumstances would render such an award unjust." Id. (internal quotation marks and citations omitted). "Although this court has the authority to allow and fix the amount of attorneys' fees on appeal, we exercise this power with caution, believing in most cases the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." Id. (internal quotation marks and citations omitted). We grant Plaintiffs' motion for attorneys' fees on appeal, and remand to the circuit court to conduct a hearing to determine the reasonableness of the attorneys' fees requested.
Conclusion
We conclude that the circuit court did not err in denying KCPS's motion for directed *623 verdict and motion for JNOV; substantial evidence supported submitting the case to the jury. Further, the circuit court did not err in denying KCPS's motion for new trial based on instructional error; substantial evidence supported the instructions given the jury. Finally, we find no abuse of discretion in the circuit court's award of attorneys' fees.
We affirm the circuit court's judgment.
All concur.

Sections 213.010, et seq. , RSMo Cum. Supp. 2014.

Holmes reported that on one occasion after Holmes had worked all night, including mandatory overtime, he was supposed to be relieved by Sergeant Vick at 10:00 a.m. Holmes inquired into when Vick would be arriving. Vick did not arrive until approximately 12:00 p.m. He sat Holmes down and told him, "Look, I need to tell you who you work for. I'll get here when I get here, and you don't tell me what time to get here."

Additionally, in arguing lack of a causal connection to the complaints and adverse action, the only argument made to the trial court was that the September 2014 shift change could not have been an act of reprisal because it reduced overtime.

KCPS requests review for plain error if we find this issue waived. "Under Rule 84.13 (c), plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Reed , 504 S.W.3d at 246. Plain errors are evident, obvious, and clear. State v. Johnson , 524 S.W.3d 505, 513 (Mo. banc 2017). "However, plain error review rarely is granted in civil cases[.]" Reed , 504 S.W.3d at 246. "We will reverse for plain error in a civil case only where the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." McCrainey v. Kansas City Missouri School Dist. , 337 S.W.3d 746, 755 (Mo. App. 2011).
Given that KCPS conceded at trial that Plaintiffs made complaints prior to alleged retaliation, our review threshold of "evident, obvious, and clear" error is unattainable. KCPS states in its reply brief that "[w]ith the benefit of a trial transcript, KCPS is able to track and analyze the various permutations of protected activity and alleged adverse employment actions that Plaintiffs are claiming." If parsing through the post-trial transcript was required for KCPS to make this argument, the trial court could hardly have been expected to reach the conclusions KCPS now advocates as obvious and clear. This is particularly true where Plaintiffs were to be given the benefit of all reasonable inferences from the evidence. We decline to exercise our discretion and review this claim further.

We note that, while there may be sufficient evidence to support submitting a claim to a jury, this does not preclude a claim that the court erred in the manner the claims were submitted. We address below KCPS's separate claim that the court erred by improperly instructing the jury.

Although KCPS points to White's testimony on cross-examination that White made no complaint of age discrimination prior to when he and Holmes made "complaints on the same day," this testimony was clearly in reference to formal complaints Plaintiffs filed with the Missouri Human Rights Commission. White testified that he approached Harris in 2013 about concerns he was being targeted by LaBranche because of his age. Prior to October 2014 White also participated in Overton's investigation of Holmes's complaints and therein made age discrimination claims.

With regard to the timing of the complaints, KCPS's proffered replacement offered no time frame establishing when the complaints were made, and did not otherwise address the issue KCPS now claims was court error to ignore.

Further KCPS's "causal connection" argument had nothing to do with timing of the complaints. KCPS's causal connection argument was as follows: "Here, rather than suggesting retaliation in response to Plaintiff's complaints, the record actually shows that KCPS took steps to alleviate Plaintiffs' scheduling concerns by reducing the number of mandatory overtime assignments they received and adjusting the shift schedules to eliminate holdover periods at the end of Plaintiffs' shifts."

KCPS's lack of good faith arguments were that Plaintiffs contended management "ignored seniority when making work assignments," and seniority and age are not interchangeable. Further, KCPS alleged "the record at trial was devoid of any logical basis or corroboration supporting a good faith belief that age discrimination had occurred prior to the alleged retaliatory events." KCPS makes no lack of good faith arguments on appeal.

The MHRA considers retaliation for engaging in protected activity "an unlawful discriminatory practice." § 213.070.

Although KCPS states that Plaintiffs asked for between $30,000 and $75,000 in compensatory damages and were only awarded $3,000 each, evidencing lack of success, Plaintiffs' counsel acknowledged to the jury the difficulty in determining damages, with monetary damages being "the only option" at that point to right any harm:
And [Plaintiff's counsel] and I are in a really tough position, because if we ask you for too much, it may seem greedy, but if we don't ask you for enough, then we've failed in our job of representing our clients. So after talking about it, we came up with a range that to us we thought seemed reasonable in this case. Some of you may think this range is not enough; some of you may think it's too much. This is your verdict. So you get to decide. But our suggestion is that you consider an award of damages of somewhere between 30 and $75,000.

KCPS additionally contests items within the attorney billing records, such as non-specific entries, entries rounded to the full hour, and that Plaintiffs' individual counsel (from separate law firms) should not have billed separately for joint actions. KCPS presented these same issues to the trial court and we presume the court considered these arguments. The trial court was in the better position to weigh these considerations and KCPS has failed to meet its burden of proving the court abused its discretion in doing so.