

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

WILLIAM M. DAVIS, Trustee of the )
Restatement of the Bill D. Davis and )
Judith E. Davis Joint Revocable Trust )
Agreement dated January 27, 1993, )
                              )
           **Respondent,**  )
                              )
**v.**                            )
                              )
                              )
LARRY A. SMITH and MARY L. )
SMITH, )
                              )
           **Appellants.**  )

**WD84125**

**OPINION FILED:**
**March 22, 2022**

**Appeal from the Circuit Court of Ray County, Missouri**
**The Honorable Kevin L. Walden, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

Mr. Larry Smith and Mrs. Mary Smith (collectively "the Smiths") appeal *pro se* from the

judgment of the Circuit Court of Ray County, Missouri ("trial court"), following a bench trial, in

favor of the Bill and Judith Davis Revocable Trust ("Trust") on the Trust's claim for injunctive

relief against the Smiths, enjoining the Smiths from interfering with the Trust's use of its easement

for ingress and egress. We affirm.

**Factual and Procedural Background**[1]

This appeal arises from a dispute amongst neighbors in a rural county concerning the maintenance of a shared driveway used for the purpose of ingress and egress to and from their respective properties.

The Smiths are fee simple owners of the fifteen-acre lot addressed 22525 Bobwhite Road, and have been since 1997. Ms. Kendra Shrout was the fee simple owner of the adjacent five-acre lot addressed 22523 Bobwhite Road until 2018 when title was conveyed to the Smiths.[2] The Trust is the fee simple owner of the adjacent ten-acre lot addressed 22521 Bobwhite Road, and has been since 2015. The Trust's ten-acre lot is landlocked; the only way to access the lot is a thirty-foot-wide driveway over the Smiths' property.[3]

In 2007, the Trust's ten-acre lot was then owned by LaSalle Bank National Association ("Bank"). That same year, the Smiths and the then owner of 22523 Bobwhite Road executed an Easement Agreement[4] granting the Bank an easement appurtenant in the thirty-foot-wide driveway

---

[1] "In reviewing a bench-tried case, the appellate court views the facts in the light most favorable to the judgment." *Price v. Thompson*, 616 S.W.3d 301, 305 n.2 (Mo. App. W.D. 2020) (internal quotation marks omitted).

[2] Ms. Shrout was originally named as a party to the underlying cause of action filed by the Trust, but was voluntary dismissed prior to trial.

[3] The thirty-foot-wide driveway crosses both 22525 and 22523 Bobwhite Road, which are both now owned by the Smiths, and is the only right-of-way permitting passage between the public roadway, Bobwhite Road, and the Trust's land.

[4] The Easement Agreement describes the easement as follows:

> A thirty (30) foot ingress-egress easement over those portions of lot 1A and lot 2A in the replat of lots 1 and 2, in Ray County Missouri, being 15 feet on each side of the following described centerline: beginning at a point on the West line of said lot 1A that is South 04 degrees 24 minutes 56 seconds East 75.96 feet from the Northwest corner of said lot 1A, said point being the centerline of Bobwhite Road; Thence southeasterly along the centerline of said easement the following course: south 87 degrees 47 minutes 31 seconds East 91.01 feet; South 57 degrees 27 minutes 19 seconds East 50.01 feet; South 37 degrees 47 minutes 00 seconds East 206.56 feet; South 46 degrees 38 minutes 50 seconds East 77.69 feet; South 72 degrees 51 minutes 50 seconds East 55.11feet North 81 degrees 48 minutes 50 seconds East 69.23 feet; North 71 degrees 53 minutes 16 seconds East 76.27 feet; South 29 degrees 16 minutes 41 seconds East 307.95 feet to the North line of lot 3 in Ferguson Minor subdivision recorded at slide number 474, and to the terminus of said centerline easement.

("easement driveway"), running with the land and binding on the successors, heirs, and assigns of the parties.

In May 2017, the Smiths purchased new gravel for maintenance of a portion of the easement driveway. The Smiths thereafter forwarded a copy of the receipt reflecting their purchase of new gravel to the Trust's trustee ("Mr. Davis") and requested that the Trust contribute $1,000 (less than 1/3 the cost of the gravel) toward the expense of maintaining the easement driveway.[5] The Trust refused to do so, which led the Smiths to block the easement driveway and led to much rancorous discord between the parties for a significant period of time. Ultimately, upon the Smiths' refusal to allow the Trust access to the easement driveway, the Trust filed a lawsuit against the Smiths in June 2018 seeking injunctive relief and other damages.

The parties thereafter executed a stipulated preliminary injunction, which was accepted and entered by the trial court. The stipulation provided that neither the Smiths nor their agents would interfere with the use of the easement by the Trust, its tenants, agents, or invitees during the pendency of the litigation.

However, in May 2020, the Smiths locked the gate to the easement driveway, preventing use of the easement. The Trust filed a motion for contempt and a motion to set a trial date. The trial court later issued a show cause order, setting both the trial date and contempt hearing for August 10, 2020.

---

[5] Although the issue is not before us today because the Smiths did not assert a counterclaim for easement maintenance repair damages in the proceedings below, courts in this state that have addressed the distribution of maintenance or repair cost related to an easement appurtenant have concluded that apportionment of such cost "between the owners of the dominant and servient tenements is fair and just, *even though the agreement creating the easement is silent with respect thereto*, where the owners of both the dominant and servient tenements regularly use the easement." *McDonald v. Bemboom*, 694 S.W.2d 782, 786 (Mo. App. W.D. 1985) (emphasis added); *see also Marvin E. Nieberg Real Est. Co. v. Taylor-Morley-Simon, Inc.*, 867 S.W.2d 618, 623 (Mo. App. W.D. 1993) ("[T]he general rule is that all users [of the object of the easement] should contribute to maintenance in proportion to their use."). Though the Smiths' conduct in violating a subsequently discussed stipulation was inexcusable, if the Trust receives any benefits from future maintenance of the easement driveway, it may have proportionate financial contribution responsibilities as discussed in the precedent cited in this footnote.

A bench trial was held on August 10, 2020, in which the Smiths appeared in-person and *pro se*, and Mr. Davis, on behalf of the Trust, appeared in-person and with counsel. The trial court heard testimony from Mr. James Dollins, Mr. Davis's real estate agent, and Mr. Davis. The Smiths cross-examined each witness, presented argument, and offered exhibits; however, the Smiths did not testify nor did they offer any witnesses.

Mr. Davis testified that, in addition to the aforementioned facts, the Smiths' interference with the use of the easement undermined his ability to sell the property, as he was unable to prepare the property for listing. Mr. Davis's testimony was corroborated by Mr. Dollins's testimony. Mr. Davis testified that the gate was still locked just days before trial when he visited the property and that, to the best of his knowledge, the gate remained locked at the time of trial. Mr. Davis testified that upon first meeting Mr. Smith, and on at least two other occasions, Mr. Smith threatened to shoot him or anyone else who entered onto the Smiths' property.

Indeed, the Smiths were afforded great latitude in the presentation of their defense. Despite the fact that "[p]*ro se* litigants are held to the same standard as licensed attorneys," *Morfin v. Werdehausen*, 448 S.W.3d 343, 349 (Mo. App. W.D. 2014) (internal quotation marks omitted), the trial court relaxed the typically rigid formalities associated with cross-examining witnesses, admitting exhibits, and presenting opening and closing arguments. Opposing counsel also permitted the Smiths a wide berth, while maintaining professionalism and competently advocating for his client.

Upon the conclusion of trial and the trial court announcing that the case was deemed submitted, Mr. Smith fell and struck his head on a table after apparently misjudging the location of his chair. However, this incident occurred *after* the record was closed and the case had been submitted.

4

The trial court entered its final judgment on September 23, 2020, granting the Trust a permanent injunction and awarding the Trust attorney's fees.

The Smiths now appeal.

## Analysis

In their sole point on appeal, the Smiths contend that the trial court plainly erred by concluding trial proceedings before they completed their presentation of evidence and while Mr. Smith was incapacitated from his fall, in violation of their right to procedural due process.

"At its core, procedural due process requires the opportunity to be heard at a meaningful time and in a meaningful manner." *Jaeger v. Res. for Hum. Dev., Inc.*, 605 S.W.3d 586, 588 n.3 (Mo. App. W.D. 2020) (internal quotation marks omitted). "This does not mean that the same type of process is required in every instance; rather, due process is flexible and calls for such procedural requirements as the particular situation demands." *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77, 82 (Mo. banc 2008) (internal quotation marks omitted).

The Smiths do not claim that they were denied the opportunity to be heard at a meaningful time, but that they were denied the opportunity to be heard in a meaningful manner; that is, that the presentation of their defense was curtailed by the trial court. However, the Smiths failed to raise their procedural due process claim before the trial court. And, a constitutional issue may not be raised for the first time on appeal; instead, it "'must be raised in the trial court at the earliest opportunity, consistent with good pleading and orderly procedure.'" *G.B. v. Crossroads Acad.-Cent. St.*, 618 S.W.3d 581, 593 (Mo. App. W.D. 2020) (quoting *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 701 (Mo. banc 2008)). Hence, their claim may only be reviewed for plain error which is rarely granted in civil cases. *Id.*

5

"Under Rule 84.13 (c), plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 613 n.4 (Mo. App. W.D. 2018) (internal quotation marks omitted). "We will reverse for plain error in a civil case only where the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* (internal quotation marks omitted).

Even if we were to exercise our discretion and review the Smiths' claim under the plain error standard, as the Smiths ask us to do, it is clear from the record that their procedural due process rights were *not* violated. In other words, there is no error, plain or otherwise.

Although the Smiths appeared *pro se*, only Mr. Smith engaged in argument, witness examination, and evidence presentation. Mrs. Smith repeatedly declined to either make an opening statement, examine witnesses, propose or oppose objections, testify, or present any evidence when asked by the trial court if she wished to do so. Mrs. Smith even asked Mr. Smith to "[p]lease stop" while he was engaged in a lengthy closing argument that appeared to veer off topic.

Mr. Smith took the lead in their defense at trial. Mr. Smith presented an opening statement, cross-examined Mr. Dollins, crossed and re-crossed Mr. Davis, moved to admit exhibits, and presented a lengthy closing argument.

On multiple occasions during trial, Mr. Smith spoke out of turn and in narrative form, including during his cross-examinations of Mr. Dollins and Mr. Davis. However, when asked by the trial court if he would like to testify, Mr. Smith repeatedly declined to do so. Mr. Smith stated, "Well, I don't mean to testify," "I have no reason to testify," "What would I testify to . . . ." On another occasion when the trial court inquired if Mr. Smith wished to testify, Mr. Smith stated

6

unequivocally, "No, sir." The trial court asked Mr. Smith if he wished to call any witnesses, but Mr. Smith stated, "I don't have no witnesses."

In his effort to admit exhibits into the record, Mr. Smith offered no foundation to support the admissibility of those exhibits. Nonetheless, opposing counsel reviewed the exhibits and, after determining that the exhibits had no bearing on the outcome of the proceedings, levied no objection. The trial court admitted the Smiths' exhibits despite Mr. Smith's flawed proffer.

Thereafter, the trial court asked both Mr. and Mrs. Smith if either of them had any other evidence that they wished to present, but both responded that they did not have any additional evidence to present. The trial court then stated, "All right. I'll show the Defendants have rested." No rebuttal evidence was presented.

After all the parties were permitted to present closing argument, and after the trial court concluded its remarks, Mr. Smith was once more permitted to speak. When Mr. Smith concluded his brief remarks, the trial court asked Mrs. Smith if she would like to make any additional comments, but again she declined. The trial court then stated, "We're going to go off record. Take it under advisement." It was not until this point, when the trial proceedings had *concluded*, that Mr. Smith fell and hit his head on a table, temporarily incapacitating him.

Contrary to the Smiths' contention on appeal, the transcript of the proceedings below reflects that the trial court *did not* conclude the proceedings while Mr. Smith was incapacitated or before the Smiths concluded their presentation of evidence.

Only now on appeal do the Smiths contend that they desired to present additional witnesses, exhibits, and theories for their defense. Notably however, in their appellate briefing to this court, the Smiths do not identify the theory they allegedly wished to present, nor do they identify the witnesses or additional exhibits they wished to present. Aside from failing to demonstrate any

error, plain or otherwise, by the trial court, the Smiths likewise have not satisfied their burden of demonstrating any manifest injustice on the record before us. Instead, the record on appeal reflects that the Smiths had every opportunity to present their case-in-chief in a meaningful way and they declined numerous opportunities extended by the trial court to testify or otherwise call additional witnesses.

Because the Smiths were permitted ample opportunity to be heard in a meaningful manner, the trial court did not err, plainly or otherwise. Thus, we affirm.

Point denied.[6]

### Conclusion

The judgment of the trial court is affirmed.

/s/ *Mark D. Pfeiffer*

Mark D. Pfeiffer, Presiding Judge

Karen King Mitchell and Gary D. Witt, Judges, concur.

---

[6] Motions for attorney's fees and damages pursuant to Rule 84.19 were filed by the Trust and were taken with the case. Though the Smiths are self-represented and their arguments on appeal are not artfully presented and ultimately lack merit, their underlying dispute with the Trust is not "readily recognizable as devoid of merit on the face of the record," *Major Saver Holdings, Inc. v. Educ. Funding Grp., LLC*, 350 S.W.3d 498, 509 (Mo. App. W.D. 2011), and thus, we deny the motions for attorney's fees and other sanctions sought by the Trust on appeal.